FRANCIS G. RUSSELL, RECEIVER OF THE MERCHANTS' MUTUAL FIRE INSURANCE COMPANY v. THOMAS BERRY.

*Mutual insurance companies—Assessments to pay debts.*

The liability of persons insured in mutual insurance companies organized under Acts 82 of 1873 and 66 and 142 of 1877, to pay their proportion of such assessments as shall be sufficient to meet all of the company's losses and liabilities, cannot be avoided by any arrangements entered into with the company whereby the insured seeks to limit such liability; nor can it be lessened by any provisions in the articles of association.

Error to Wayne. (Speed, J.) June 13.—October 3.

ASSUMPSIT. Defendant brings error. Affirmed.

*Ervin Palmer* and *George Gartner* for appellant.

*Wilkinson, Post & Wilkinson* for appellee. Provisions in articles of association are invalid if not warranted by the statute under which the company is organized : *Stewart v. Father Matthew Society* 41 Mich. 67 ; see *Upton v. Tribilcock* 91 U. S. 45; *Wilbur v. Stockholders* 18 N. B. R. 179 ; *Greenwood's case* 3 De G., M. & G. 459.

GRAVES, C. J. The circuit court gave judgment in favor of the plaintiff on special findings, and the defendant alleges error.

The insurance company mentioned in the title of the cause was established in 1880, under the general law of 1873 as modified in 1877, the defendant being one of the original corporators. Pub. Acts 1873, p. 107, and amending Acts Nos. 66 and 142 of 1877. In December, 1880, the defendant took out three policies, for three years each, and executed three several "undertakings" to pay future assessments. The amounts specified in these "undertakings" and the reductions by payments were as follows : One ran for $30 and was credited with $22.50 ; another was for

$6 and had a credit of $4.50 ; and the third was for $3 and¹ was credited with $2.25.

In the fall of 1881 the Commissioner of Insurance entered proceedings in accordance with section seventeen of the organic act to wind up the company by .insolvency, and the Court found that the proceedings were well based, and appointed the plaintiff receiver. The company was indebted in little sums to various persons, the whole amounting to· $300. It was also indebted to I. Blitz & Son in the sum of $4586.50 for a loss by fire in September, 1881. The policies and "undertakings" of this firm were in the same form as those of defendant. The assets of the company, including $1088.42, consisting of acknowledged balances on standing "undertakings," was $1601.33. The total insurance represented by existing policies was $400,766.66, and the total of "undertakings" on that insurance was $4-843.87.

For the purpose of paying I. Blitz & Son and the other creditors, and in order to defray the expenses of the receiver and pay him for his services, he proceeded to levy a pro rata assessment against the members on the amount of insurance held by each for the required sum, and of this the portion of defendant was $91, and this is the demand for which he was adjudged liable by the court below in this· action.

The material objection urged against the recovery is that,. under his contract with the company for insurance, he was· not to be liable for assessments beyond a sum then given, and that the assessment sought to be enforced, being above that limit, it is not valid.

In support of this proposition he refers to his promise in the application and undertaking to pay whatever assessments· the directors should, from time to time, declare to be required, but not exceeding in the whole the sum there mentioned ; and then quotes a provision in the articles of association as being a sufficient warrant for the limitation ; and next cites a paragraph in section five of the organic act,.

which, he contends, amounts to a grant of full authority for the provision in the articles.

The passage in the articles is found in section 18, and it reads as follows: "The extent of the liability of the members of the company shall not exceed the amount of undertaking given for premium on their risk;" and the clause in the organic act is the last paragraph of section five. The object of that section is to declare what matters shall be set out in the articles, and, after enumerating several, it closes up by saying, they "may prescribe the liabilities of the members to be assessed towards defraying the losses and expenses of the company, and the mode and manner of collecting such assessments," and this is the clause relied upon.

Does it justify the defendant's claim? Does it furnish authority for the paragraph in the articles? It is a vague provision, and the purpose of its enactment is open to speculation. But this is plain; it does not say that liability to be assessed may be fixed *below* the point necessary to raise sufficient to pay losses and expenses, and there is no room for implying that meaning. The clause professes to be remedial and not obstructive, and it should be interpreted in that light; it requires to be expounded in harmony with the scheme to which it belongs, and not in derogation of it, and the language offers no obstacle.

The defendant is only able to accommodate it to his case by imputing a sense beyond the tenor of the words, and one which directly antagonizes the principle of the statute and the theory of the corporations it provides for. As he reads it, it operates to enable companies, and those insuring in them, to cut short the only source of revenue and preclude the accumulation necessary to pay losses and even such expenses as the statute has itself compelled to be incurred. This is not a reasonable construction.

The supremacy of the organic act will not be questioned. No one will contend that the organizers of the company, or the corporation, when organized, had any power to contravene the principle of that act, or to adopt any rule or pro-

vision or make any contract not authorized by it. Whatever capacity the company possessed to contract or be contracted with was derived from it. It prescribed the conditions on which corporate rights and privileges might be enjoyed, and on which individuals might become insurers and insured. When the company organized, it necessarily accepted all the conditions, because on no other terms was organization possible; and when the defendant became an insured member, he necessarily submitted to all the obligations, because the relation could not arise or exist on any other terms. The legal consequences were inevitable. No words in the articles or in the insurance papers could overrule the imperative regulations and requirements of the statute.

Without further reference to the ambiguous provision in section 5, and without enlarging on the controlling operation of other portions, I pass to section 17. It was under this section that the defendant was assessed, and the authority appears conclusive. The language is explicit. It declares that the receiver "shall at once proceed to assess upon all the members and persons insured in such company, such sums of money as will in the aggregate be sufficient to pay all the losses and liabilities of said company, together with the services and expenses of such receiver, according and in proportion to the amount of their insurance or interest in such company;" and power is given to enforce collection by action in the circuit court, and also to re-assess as often as necessary. No reference is made to "undertakings," nor to the state of account in regard to prior assessments or former payments. No exception is made nor qualification expressed. Nor is any discretion given. The terms are imperative.

The law is now dealing with the company when it has become insolvent and is being wound up in chancery. There is no capital stock. The means to pay losses and expenses, and also for services, must be obtained, if at all, by the levy of contributions in accordance with the vital principle of all such organizations. There can be no other re-

sort. And were this to be considered as denied it would be equsvalent to saying the Legislature required a specified end, and in the very act of requiring it conferred a right to withhold the indispensable means. It is surely not admissible to contend that the law means to recognize, and much less sanction, repudiation, or that it purposes to exact services and expenses in winding up the affairs, and at the same time empower those from whom contributions could alone come to avoid contributing therefor and leave the receiver to go unprotected and unpaid.

The obligation of the insured party is fundamental. It does not depend upon the form which may be given to his promissory "undertaking." It is a positive result of his connection with the company, and the principle which underlies it somewhat resembles that which underlies the liability to taxation. Responsibility is inseparable from the status of an insured member. The organic act makes it so, and no kind of stipulation between the agents of the company and the person who becomes insured can supersede or impair it. It would be just as practicable for a person entering into marriage to provide by covenant against its necessary and imperative duties and obligations.

So far as the other points in the brief merit attention they are disposed of by what has been said.

The judgment should be affirmed with costs.

The other Justices concurred.