Little, Justice.
Louis J. Baribot filed in the city' cour-t of Richmond county his complaint against the Mutual Reserve Fund Life Association, a corporation duly incorporated under the laws-of New York, and doing business in the State of Georgia, and county -of Richmond, in which he alleged that on the-31st day of July, 1882, the defendant made and entered, with petitioner into the following policy contract, to wit:
“Mutual Reserve Fund Life Association.
Number. Policy. Age.
4914 $10,000 51
149 Broadway, New York.
“In consideration of the statements, representations and warranties contained in the application for this certificate of membership, and of the admission fee paid, and of -the dues for expenses to he paid on or before the 31st -day of July in every year during the continuance of this certificate, and all mortuary -assessments, payable at the office of the Association within thirty days from the date of each notice,, the Mutual Reserve Fund Life Association does hereby receive Louis J. Barbot, of Charleston, County of Charleston,. State of South Carolina, as a member of said Association. •Whenever the death fund -of the Association is insufficient to meet an existing claim by death, an assessment shall he made upon the entire membership in force a-t the date of such death, for such a sum as has been -established by the *683 Board of Trustees, according to the age of each member, as per table endorsed hereon, and the sum received from such assessment (less 25$ to he set apart for the reserve fund) shall go into the death fund. Within ninety days-after receipt of satisfactory evidence to the association of the death of the above named member, during the continuance of this certificate of membership, there shall be payable to Josephine M. Barbot (wife) of Charleston, County of Charleston, State of South Carolina, -if then living, otherwise to the legal representative of said member, the sum. of ten thousand dollars from the death fund of the association at the time -of -said death, or from any monies that shall be realized -to the said fund from the next -assessment to be-ma-d-e as herein above sat forth, and no claim shall be otherwise due or payable, except from the reserve fund as hereinafter provided.
"The net earnings of the association, together with the 25$ received from each assessment, shall constitute a reserve-fund, which shall be deposited with a trust company, and be securely invested in United States bonds, mortgages, oi" other interest-bearing securities by said trust company, as trustee, for the exclusive benefit of the members of the association, and the interest on the same, as it accrues, shall be-placed by said trustee to -the credit of the -death fund. The reserve fund above $100,000, and in excess of sums represented by outstanding bonds, shall be applied to the payment of claims in -excess of the American Experience Table of Mortality, and when any claim by death is due, to-making up any deficiency that may then exist in tire death fund. After the expiration of each period of five years,, during the continuance of this certificate of membership, a bond will be issued (bearing interest at the rate -of 4$ per ■annum, payable annually to the death fund) for an equitable proportion of the reserve fund, and the principal of said bond shall be available ten years from its date towards paying future dues and -assessments under this certificate; and should said membership hereunder cease by death or otherwise, any portion of said principal not thus used shall be-applied to increase the bonds issued at the next quinquennial apportionment to other members of the association holding certificates issued during the same year as this certificate, and -at which apportionment the rate .of assessments' *684 may be changed to correspond with the actual mortality ^experience of ithe association.”
Then follow various conditions which are immaterial to .an adjudication of the questions raised, and in conclusion it is provided that the application for membership shall ■constitute a part of the certificate. 'Endorsed on the policy is the following:
Table of Rates.
Admission Eee: $1,000: $8.00; $2,000: $12.00; $3,000: :$15.00; $5,000: $20.00; $10,000: $30.00.
The dues are limited to $2.00 on each $1,000, payable .annually -in advance.
Assessment Rate Table.
bib assessments will be made while there remains in the death fund a sum sufficient to pay a claim in full. When ran assessment is required, each survivor shall pay for each $1,000 of the amount of his certificate as follows:

After setting out the certificate of membership and insurance, the material portions of which are copied above, Barbot further alleged: That he had complied with the terms of said contract 'and with the constitution and by-laws of the defendant, and on demand had paid regularly the annual dues and all legal assessments made on him by defendant, as in his certificate of membership he had agreed to do; that from the 31st day of July, 1882, to the 31st day <of July, 1895, he paid as follows: Beginning September *685 1st, 1882, $18.20, 60 days from each payment to September 1st, 1885; from September 1st, 1885, $28.20, 60 days, from eacb payment to September 1st, 1887; from September 1st, 1887, $31.20, 60 days from eacb payment to September 1st, 1895; the said sum of $31.20 being the maximum rate of assessment fixed 'by 'the constitution and bylaws of defendant. The reserve fund being accumulated by tbe defendant in the manner and for the purpose stated in their contract had grown steadily under the rates of assessments heretofore of force, and on July 1st, 1895, had. reached the amount of $3,928,479.55. Independent of this reserve or emergency fund, the income of the defend-' ant has steadily increased, so that ’the six months immediately preceding the first of July, 1895, the balance of income of tbe defendant over and above disbursements for’ tbe same period, was $4,428,766.84. Tbe reserve or emergency fund having grown large enough to meet any unlooked for death-rate, and still growing larger under the then rate of assessment, the members of tbe defendant company, in annual session, on January 23rd, 1889, enacted, a by-law, limiting the rate of assessment upon all those who were members prior to January 1st, 1890, to the maximum rate at age of entry. That on August 1st, 1895, the directors, of their own motion, repealed this by-law limiting their assessments as hereinbefore stated, and levied, without the knowledge or consent of plaintiff, an excessive assessment on those who were -members -of said association -prior to January 1st, 1890, fixing the assessment at double the amount of the maximum rate at the date of their entry as members of ’the association, and the defendant demanded payment of said increased sum of plaintiff. That plaintiff' tendered to defendant’s agents in this State the sum of' $31.20, being 'the maximum rate of its assessments at date-of his entry into the company and the maximum sum fixed in the by-law aforesaid, which the said agents refused to- *686 receive; that plaintiff then renewed the tender to the company at its home office in the city of ISTew York, through the vice-president of said company, who was authorized to receive the same; he likewise rejected and refused the ;same; both of which tenders were made said defendant company within the time prescribed by said company for the payment of said assessment. That defendant, over his protest, has refused to continue plaintiff as a member of said .association, or to allow him to participate in any of its benefits and profits, or to refund him the membership fee and .the annual dues and mortuary assessments paid into' said «company for said benefits upon the faith of his contract, with all of the terms of which plaintiff has strictly complied. That at the -time said excessive and illegal assess: ment was demanded from plaintiff, which he has refused to pay as hereinbefore stated, and for which refusal he has heen forced out of the association, there was 'then in the «death fund a sum sufficient to pay a claim in full. That •defendant is indebted to «plaintiff for cash received from him for membership fees, annual dues and mortuary assessments, in the principal sum of $2,212.40; interest on each payment from date of payment to September 1st, 1895, at Ifo per annum, $1,429.60, mailing a total indebtedness of principal «and interest to September 1st, 1895, of $3,642.00.
To this petition, the defendant demurred as follows:
1st. Because the petition does not set out a legal cause of action.
2d. Because the petition alleges that the defendant is indebted to your petitioner for cash received from him a certain amount for which he seeks recovery, while the other allegations of the petition show that said sums were never diverted by -the defendant, but were applied by it to the uses intended by plaintiff, and therefore he is not entitled to recover them, the plaintiff having received in *687 consideration therefor protection for his beneficiary "under the policy since the date thereof, to wit: July 31st, 1882.
3d. Because, if the plaintiff has been wrongfully dealt with as alleged, his remedy is not by action to recover assessments paid with interest thereon, bnt by action for reinstatement as a member for defendant company.
4th. Because the petition nowhere alleges that the action of the directors on August 1st, 1895, iu raising the assessment as set out in the petition, was illegal or unauthorized, or in any way a violation of “the constitution of the company —the truth being that the constitution expressly gives to the board .of directors the right to fix the amount .and rate of assessment.
5th. Because, the increase of the assessment not being .alleged to be unconstitutional or illegal, the plaintiff, as a member of a mutual association in which he has a vote, is bound by the actions of the officers of the company, unless he charges fraud or mistake iu their conduct, and no such •charge is contained in plaintiff’s petition.
6th. Because the petition only sets out the certificate of membership of the plaintiff, and omits to attach copies of his application and of the constitution .of the defendant company, both of which documents form essential parts of plaintiff’s contract, he being a member of a mutual association .and having a vote in choosing its officers, and his rights being subject to the constitution in existence at the date of his oertifioabe-and also to all amendments to said constitution legally adopted since the date of his certificate — 'the truth being that the original constitution and also- the amended ■ constitution give the board of directors full power to change assessments as they did; and attorneys for defendant company ask that plaintiff’s petition he dismissed unless he shall attach copies of his application and of the constitution and ..amendments thereto now of force.
To meet the 6th ground -of the demurrer, the plaintiff, *688 by leave of tbe court, amended his declaration and set out the constitution and ¡by-laws of tbe defendant in full, and such part of the application for membership in said company as by agreement of counsel was relevant. The organic law of the defendant company, as set out in the amended, petition, is entitled “Constitution and By-Laws of the Mutual Reserve Fund Life Association”; the avowed objects of which association are “to promote the well-being of all of its members, and to furnish substantial aid to their families or assigns in the event of a member’s death.” There are many provisions contained in the constitution and bylaws with respect to the organization and internal management of the association, which are immaterial to a consideration of the present case, and therefore are not here set out. Provision is made for annual meetings of the members of tbe association, at which each member of the association in good standing shall be entitled to one vote in person, or by proxy. It is provided that at such annual meeting a board of directors shall 'be elected, who shall in turn elect the officers of the association, and shall also elect three of their own number, who shall constitute an executive-committee, the duties of which are to appoint medical examiners, audit death claims, determine all salaries and ex-' penses, make contracts with general agents and others for the furtherance of the business of tbe association and for the benefit of its members, etc. Provision for the creation and maintenance of what is termed a “death fund,” and also for the creation and maintenance of what is termed a “reserve fund,” is made as follows: Seventy-five per cent, of all the net death assessments (the manner of making which will hereafter be pointed out) shall go into tbe death fund, from which losses shall be paid. The remaining twenty-five per cent, shall be carried to the reserve fund, no part of which shall be sued for expenses. Tbe net earnings of tbe association, together with twenty-five per cent.. *689 of said, net receipts from each assessment, shall constitute a reserve fund, which shall be deposited with a trust company or companies, or departments constituted by governmental or legal authority, and upon the order of the hoard of directors of the association shall he securely invested in United States bonds, mortgages, or other interest-hearing securities, for the exclusive benefit of the members of the association, and the interest on the same as it accrues shall be placed to the credit of the death fund, to be used in providing for the current death claims.
The mortuary department shall be distinct from the other departments of the association, and all moneys received from the mortuary calls, less 'the cost of collecting, shall pass through said department, and (after deducting certain. named expenses) shall be deposited by the 'treasurer in banks-, or trust companies, to an account to be known .as the “mortuary account of the Mutual Reserve Fund Life Association,” and shall only he withdrawn from said account by transfer, on the .order of the president and treasurer, to the reserve fund, or for investment in such securities as may he required by the laws relative to deposits to secure admission for the transaction of business by the association, as may he approved by the board of directors of 'the association, .and which securities shall be deposited, as required by the constitution; or iu settlement of death claims under 'the certificate of the association, said claims having been first approved by 'the executive committee of the association.
With respect to the reserve fund, it is further provided that that fund above $100,000, and in excess of sums represented by outstanding bonds (issued in the manner hereinafter pointed out), may be applied to the payment of claims in excess of the American Table of Mortality, and when any claim by death is due, after a mortuary assessment upon each member of the association has been made according to the rules of the association, to making up any deficiency that may then exist in the death fund.
*690 After the expiration 'of each period of five years, during the continuance of a certificate of membership, a bond shall be issued for an equitable proportion of the reserve fund, •the principal of -which shall be available ten years from its •date towards paying future dues and assessments under said certificate. Should the membership under such certificate cease, the bond shall /at once become null and void, and any portion of the principal not so used shall be applied to increase the bonds issued at the next quinquennial apportionment to other members of tbe association bolding certificates issued during tbe same year as tbe aforesaid certificate.
It is further provided that the corporate powers of the associatioai shall be vested in the board of directors, who shall have power to adopt such rules and regulations as they may deem necessary, not inconsistent with /this constitution and by-laws, and to amend the same, a/nd to fix the amount and rate of assessments, fees and dues, and to enact rules and regulations for the government of the officers and employees and for the management of the affairs of the association. They shall have authority to fix and determine the amount of benefits for which certificates of membership will be issued, rates of assessments, admission fees and annual dues, and shall have authority to adopt and execute, in addition to the mode in this constitution and by-laws provided for, such other or additional plans and systems of participation in benefits of membership, and of the holding, division and legal investment of reserve fund and accumulation in conformity with the laws of the State of New York, and of the use thereof for the benefit of members from time to time, as the board of directors may deem expedient and for tbe best interests of tbe association.
It is further provided 'that 'on the first week of the months of February, April, June, August, October and December of each year (or ait such other dates as the board of directors may from time to time determine), an assessment shall *691 be made upon the entire membership in force at the date'of ■the last death of the audited death claims prior thereto, for .such a sum as the executive committee may deem sufficient •to meet the existing claims by death, the same to be apportioned among the members according to the age of each .member. A failure to pay tbe assessment within thirty •days from the first week day of February, April, June, .August, October and December (or within thirty days from the date of the periods as may be named by itbe 'directors), shall forfeit his membership in this association, with all the ■rights thereunder, and the certificate of membership shall ■be null and void.
It is also provided that the constitution and by-laws may ■be revised or amended at .any annual meeting of tbe association, or at special meetings of 'the members called for that purpose, by a two thirds vote of tbe members present in ■person or by proxy, but no such amendments shall be considered unless .the same shall have been submitted in writing to tbe executive committee at least thirty days previous ■to such annual or special meeting, except by the unanimous •consent of the members present at such a meeting.
In the amended petition it is alleged that the following .resolution was offered at the annual meeting of the members held January 23d, 1889, by Gen. Isaac H. Shields, of Philadelphia, Pa., and after full discussion, unanimously .adopted, to wit:
“Whereas, the Mutual Reserve Fund Life Association' was .established upon tbe natural premium system of life insurance, which requires members to pay simply their proportion of the death claims, with 33$ additional thereto .(which is equivalent to 25$ upon the gross), which additional sum has for its object the creation of a reasonable surplus .reserve emergency fund ito provide against unforeseen contingencies, its foundation principles being in opposition to accumulations of vast sums of money taken from the pockets of the policy-holders; and whereas the aforesaid surplus reserve emergency fund is rapidly increasing, and has al *692 ready reached the enormous sum of $1,885,000: — Therefore resolved, that in the event any sums 'axe hereafter required for the payment of death claims, in excess of ‘the. sums realized from current bi-monthly mortuary premium calls at the maximum rates at age of entry, as established by the association, that are applicable to the death fund (which rates are based upon the American Table of Mortality, with 33fo loading for the reserve fund) the board of directors,, shall have power to pay such death claims in excess thereof from the current receipts that are applicable to tbe surplus. reserve emergency fund, provided that said surplus reserve-emergency fund shall always be maintained at a sum not' less than $2,000,000; but nothing in this resolution shall-conflict with 'the provisions of the constitution or by-laws.”'
The amended petition contained also an extract from the application of plaintiff for membership in the association,,. as follows:
“It is hereby declared and warranted that the foregoing' answers and statements are full, complete and true, and it is agreed that this declaration and warranty shall form the, basis of the contract between the undersigned and the Mu- ■ tual Reserve Bund Life Association, and are offered to said association as a consideration of the contract applied for, and subject to all the limitations and requirements of the constitution and by-laws, all of which are made part of the certificate to be issued on this application.”
Upon the coming in of plaintiff’s amended petition, the-court rendered a judgment sustaining the demurrer filed by the defendant, and dismissing plaintiff’s suit, to which judgment iand dismissal the plaintiff excepted, and the errors assigned thereion form the basis of the writ of error sued out', to this court.
1. The -declared purpose of the defendant, which is a mutual life association, is to promote the well-being of all of its members and to furnish substantial aid to their families or assigns in the event of a member’s death. In accomplishing this object, it was the rule of the association to issue its certificates of membership, containing a contract of in *693 •suranoe on the life of the member, on the basis of a grad-mated admission fee, certain dues, and' also mortuary assessments to pay death claims when required; iit was provided that these assessments should be made at given intervals •and graduated according to the age of the policy-holder and the amount insured. Two funds were -provided for by the •constitution and by-laws of the association: a death fund and a reserve fund. The death fund was to be maintained •by devoting 75$ of all mortuary assessments collected and interest accruing from an investment of the reserve fund in a certain maimer directed. The reserve fund was to he maintained by the net earnings, together with the remaining 25$ from mortuary assessments. The authority given to ■the hoard of directors -by the constitution .and by-laws of the •association is very broad. Among others, they had the power to fix the amount and rate of assessments, fees and •dues; and -this power was only limited by .other provisions •of the constitution and by-laws. ' The constitution and bylaws further provided as to the -manner of the investment •of the reserve fund, and the issuance of bonds periodically to the members representing as between them an equitable proportion of the reserve fund, which at a given time should be available towards paying dues .and assessments. It was ■further provided that the reserve fund .above $100,000 and in excess of sums represented by outstanding bonds, might be applied to the payment of claims in excess of the American Table of Mortality, and to making up any deficiency in the death fund when any claim is due, after a mortuary assessment upon each member, according bo the rules of the association, has been made. It will thus he seen that, under ■the constitution and by-laws as originally adopted, no part -of the corpus of the reserve fund could in .any event be applied to the payment of death claims, unless that fund exceeded a given .amount, and then only to the payment- of •claims in excess of the American Table of Mortality; that is, claims arising from 'deaths occurring so frequently as to *694 exceed tlie average laid down in the mortality table; and also to making np any deficiency that should he found to exist in the death fund after the usual mortuary assessments-upon the members had been made. According to the terms-of the plaintiff’s policy, no mortuary assessment could be-m-ade upon members while there remained in the death fund a sum sufficient to pay in full death claims pending at. the interval or intervals when such assessments were authorized to be made. The plaintiff -alleged in his petition that-he had paid all the assessments made from July, 1882, to-July, 1895, and that ion August 1st, 1895, the directors levied an excessive assessment on the members of the association who became members prior to the 1st of January,. 1890, and fixed the amount of such assessment at double-the amount of the maximum rate at the date of their entry as members of 'the association, which maximum rate he alleges was shown by a table attached to his certificate off membership and policy of insurance.
This -being a mutual association, controlled by its members, and each hearing his share of the burdens for the benefit -of the whole membership, the contract of a member is-different from an ordinary life insurance policy. The latter-is held to the contract which determines the rights of the-company and the insured, and to be the whole of the contract; but inasmuch as both the benefits and the burdens-in a mutual society are to be equal and bearing on all its members alike, it is well settled .that the certificate of membership is only a part of the written evidence of the contract, and that in such a society the charter, or constitution, and by-laws in f-oroe ait the time of the admission of a member, are terms of an executory contract, and that by entering 'the society 'the member assents to all of such terms; and. that they each become a part of the contract of insurance, •whether they are incorporated in or referred to by.th-e certificate of membership or not. Supreme Commandery v. Ainsworth, 71 Ala. 436; Hellenburg v. I. O.O. B., 94 New York, 580; Masonic Mutual v. Burkhart, 110 Ind. 192; *695 Supreme Council v. Smith, 45 N. J. Eq. 466; Supreme Lodge v. Nairn, 60 Mich. 44, and other cases cited in Ni-black on Accident Insurance and Benefit Societies (2nd ed.) §136.
In tbis case, however, the constitution and by-laws of the defendant association are expressly made a part of the certificate which is held by the plaintiff. The application for membership made by 'the plaintiff to the association expressly declares that the constitution and by-laws are made a part of tlhe certificate issued on such application. It is therefore clear .that the contract on which the plaintiff relies to recover in this case not only provides that his right to recover depends upon his compliance with the terms and conditions named in his certificate, but that it is also governed by 'the terms and conditions of the constitution and by-laws of the association in force at the time such certificate was issued. The certificate of -membership and contract of insurance, which are joint in this case, has attached to it a table of rates, in which is set out the rates of admission fees, the dues, and also an assessment rate table, giving the amount at specified ages which each member of the association should pay when a mortuary 'assessment is required. It will be noted that 'the table of rates attached to the policy is denominated an assessment rate table; and it is apparent that it is designed, not to fix the amount of assessments, but to fix the relative iialtle of assessments at ages varying from 15 to 65. Section 5, article 11 -of the constitution and bylaws is as follows: “On the first week of the months of February, April, June, August, October and December of each year (or ait such other dates as the -board of directors may from time to time determine), an assessment shall be made upon the entire membership in force at the date of the last death of the audited death claims prior thereto, for such a sum as the executive committee may deem sufficient to meet the existing claims by death, the same to be apportioned among the members according to the age of each *696 member.” From tire contract of insurance .and this part of the constitution and by-laws the plan of raising funds to meet death losses as they 'occur is made plain. The death losses must in the nature of things be uncertain, and at best the mortality tables would show only an approximation of the amount to be provided to meet such losses. Therefore at the stated intervals in each year an assessment shall he made in gross for sUcii a sum as the executive authorities of the association might deem sufficient to meet existing death claims, and this gross sum is to be apportioned among the members according to age, the ratio of such apportionment, as between the members, being fixed in the table attached to 'the contract of insurance. Under this scheme, it is apparent that the amount of the gross, assessment shall be judged and fixed by the authorities of the association, and it is equally apparent that 'the amount of such assessment will vary according to the number of death claims to he provided for, as well as the number of members of the association at the time such losses occur. We conclude therefore that it was nlo't the purpose of this assessment rate table to fix a limitation upon the 'amount of the gross assessment, bu)t only to afford a guide, after such gross amount has been ascertained, for its equitable and fair apportionment among the members, graduated according to> their relative ages.
2. The plaintiff, however, mainly plants his right to recover on the effect of a resolution which was passed at the annual meeting of the members of the association on the 23rd of January, 1889. The full text of this resolution, which wias unanimously adopted, is sat out in the statement of -the pleadings preceding this opinion, and therefore is not inserted here. The plaintiff contends that under the terms of this resolution, it was the duty of the board of directors, whenever any sums were thereafter required for the payment of death claims in excess of ifehe sums realized from current bi-miomthly mortuary premium calls at the maximum rate at age of entry, to pay such sums from the current *697 receipts applicable (to the reserve fund; in other words, Chat after making a bi-monthly assessment on each member according to the maximum rate ¡at age of entry as fixed by the assessment rate table, if such assessment was not sufficient to meet outstanding dealbh claims, the directors should supply the deficiency fro-m the reserve fund. The plaintiff alleges, however, that the board of directors ignored this resolution and declined to appropriate ¡any -part of the .reserve fund to -the payment of death claims as contemplated by the resolution, although such fund amounted to much more ¡than $2,000,000, and 'that therefore the assessment levied on him on the first day of August, 1895, was excessive, unnecessary and illegal; that it was excessive and ■unnecessary because when it was levied there was in the ■ death fund by reason of such resolution a sum sufficient to pay pending death claims, and that therefore the making of such assessment was a violation of the stipulation in his policy contract, to the effect that no assessment will be made •while there remains in the death fund a sum sufficient to ■pay a death claim in full. It is admitted that at the time •this assessment was made, which exceeded the maximum bi-monthly mortuary premium call at age of entry, there •was a very much larger sum-in the reserve fund than $2,000, 000; and if the plaintiff’s contention be true ’that it was the duty of the directors, under the resolution heretofore referred to, to appropriate a part of this reserve fund to the payment of any portion of pending death claims, then it ■would seem to follow that- such assessment would be excessive. An assessment must be legally made, in order that the failure of a member to pay it shall work a forfeiture of his rights to membership. Every assessment must be in .■strict conformity with the charter and by-laws of the association and with the contract of insurance. 17 Mo. App. 254; 115 Pa. St. 492. We do not think, however, that the resolution under consideration has the effect to definitely prescribe that the bi-monthly assessments for the payment *698 of death claims should be limited as therein designated and. deficiencies supplied from the reserve fund. Undoubtedly it was contemplated by tbe members in convention that such could be done without detriment to -the interest of the association, and accordingly poiwer was given to the board of’ directors to do so. Whether or not theretofore the board of directors bad power to make such application, under the provisions of the constitution and by-laws as set out in tbe: preceding report, is not in question, although, certainly such power was given them by 'the resolution. However, while-the power was conferred, the resolution was not mandatory that such should be done by 'the directors. The grant of’ power in this case was coupled with a submission to tbe discretion -of the board of directors to judge of the propriety of so doing, and left to them the determination of whether it should or should not be done, and its effect was in no way to impair the authority to make assessments under the provisions of the constitution and by-laws. Indeed, the resolution in terms, after granting to the board full power to-make such appropriation from the reserve fund, declares-that nothing in the resolution should conflict with the provisions of the constitution or by-laws. As we have seen, the constitution and by-laws provide for bi-monthly assessments for a sum in gross, to be fixed by the executive committee, sufficient in amount to meet pending death claims; and 'while this resolution mo doubt legally and constitutionally gave the right and power to ¡the board of directors-to fix the gross sum of such assessment at an amount less-than was sufficient to meet pending death claims and to make-good the amount necessary for such purpose by appropriations from tbe reserve fund, it did not undertake by its terms-to imperatively declare that such should be don© by the-board. So construing tbe resolution, it will follow that the-power originally granted by tbe constitution and by-laws to tbe board of directors was in force ¡at the time 'the assessment was made which the plaintiff alleges to he illegal, and. *699 being in force, fee amount of fee assessment necessary to' pay suob claims was left 'to fee board, wife merely a power, wbiob they might or might not exercise at their discretion,, to limit the assessment and appropriate fee reserve fund in the manner suggested by the resolution; and it not being alleged that the assessment was illegal other than because of' such resolution, fee contention of the plaintiff must fail, and. it was therefore not error in the court below to sustain the demurrer and dismiss the plaintiff’s petition.

Judgment affirmed.

All the Justices concurring, except Simimom, O. J., disqualified.