CALKINS *v.* ANGELL.

123    77
s81NW 977
129   ²313

123    77
s81NW 977
e131  352

123    77
145   ¹430

123    77
155   291

1. MUTUAL BENEFIT ASSOCIATIONS — ASSESSMENTS — LIABILITY OF MEMBERS.

A member of a mutual benefit association organized under the provisions of 2 Comp. Laws 1897, § 7497 *et seq.*, imposing an obligation upon the association to pay death claims, and authorizing assessments to be made for the purpose, is impliedly liable for the payment of such assessments, when levied to meet claims accruing during his membership.

2. SAME—AUTHORITY OF RECEIVER.

It being provided by the organic act that a receiver appointed for such an association may continue the business for the purpose of paying death claims which have accrued at the time of his appointment, and that he may make assessments upon the members liable therefor, an assessment by a receiver, to meet claims accruing before the filing of the petition for dissolution, is as binding as if made by the board of trustees.

3. SAME—TERMS [OF APPLICATION.

An application for membership in a mutual benefit association, wherein the applicant agrees "to make punctual payment of all dues and assessments for which I may become liable," of itself amounts to a promise to pay all assessments which the association or its representative is authorized to levy.

Error to Kent; Grove, J. Submitted January 9, 1900. Decided February 20, 1900.

*Assumpsit* by Charles W. Calkins, receiver of the Masonic Life Association, against Crawford Angell, to recover an assessment. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Thompson & Temple* (*Walter W. Drew*, of counsel), for appellant.

*L. G. Rutherford*, for appellee.

HOOKER, J. The Masonic Life Association was a mutual insurance or benefit association organized under the laws of Michigan. See 2 Comp. Laws 1897, § 7497 *et seq.* On August 23, 1896, its officers instituted proceedings for the winding up of its affairs, under chapter 282, 2 How. Stat. (chapter 300, 3 Comp. Laws 1897). On December 12, 1896, a decree was entered by the Kent circuit court, sitting in equity, dissolving the corporation, appointing Charles W. Calkins receiver, directing that all property of the company be turned over to the receiver, and that he be at liberty to apply to the court for further directions from time to time. No question is raised over the authority of the receiver to do anything that a receiver may lawfully do in the premises. Death claims to the amount of $57,000 have been approved and allowed, of which $12,000 to $14,000 were for claims allowed by the court since the appointment of the receiver, and the remainder represents claims allowed by the board of trustees of the association before the petition for dissolution was filed. A dividend of 20 per cent. was paid upon these claims from amounts which came to the hands of the receiver. Afterwards, upon petition of several claimants, the court ordered and the receiver made a report,

dated November 23, 1897, showing assets and liabilities as follows:

| | | |
|---|---:|---|
| Amount of approved claims | $57,000 | 00 |
| Amount of contested claims | 11,000 | 00 |
| Paid on approved claims | 11,400 | 00 |
| Cash on hand the 12th day of March, 1898 | 3,801 | 96 |
| Assessments required to pay approved claims | 45,600 | 00 |
| Estimated amount of overlay required to meet expenses, uncollected assessments, and costs | 45,600 | 00 |

On the basis of this report, the court ordered the receiver to levy an assessment upon the members of the association shown by his report to be liable therefor, *i. e.*, to have been members when in fact death claims became liabilities against the association. The receiver was directed to collect said assessment by suit, if necessary. The total aggregate of the amount assessed was $91,216.08. The assessment against the defendant, Crawford Angell, in said order, amounted to $76.70. The defendant was a member and policy holder at the time the petition for dissolution was filed, and. this action was brought by the receiver to enforce payment of his assessment. The court directed a verdict for the defendant, and the plaintiff has brought error.

The principal claim, by way of defense to the action, is that the contract is unilateral, and that payment of assessments cannot be enforced. It is contended that it is the right of a member to decline to pay an assessment at any time, and the only consequence is that his policy lapses and he ceases to be a member. It is claimed, further, that, if wrong in this, there is no liability for an assessment made after dissolution, and that no assessment not made by the board of trustees of the association is valid. Counsel seem to agree that the defendant cannot be held liable unless the statute, or a promise, express or implied, in his contract of insurance, makes him so. We need not, therefore, cite authorities upon that point, and will proceed to examine the statute and contract.

The act under which this association is organized is No. 187, Pub. Acts 1887 (2 Comp. Laws 1897, § 7497 *et seq.*):

As said by Mr. Justice GRAVES in *Russell* v. *Berry*, 51 Mich. 289 (16 N. W. 651): "The supremacy of the organic act will not be questioned." The members are certainly subject to the liabilities prescribed by such act. It consists of 34 sections, and these must be construed together. Section 1 provides for the incorporation of mutual benefit associations. Section 5 fixes the time when they become corporations. They are under supervision of the insurance department of the State. Every policy holder becomes a member, and section 15 requires his policy to be written for a definite amount, and creates an obligation upon the association to pay. The only method of obtaining money to discharge such obligations is by assessments, and authority is given to make them. Section 22 provides for winding up the affairs of the association through the appointment of a receiver, who may, by order of the court, continue the business for the purpose of paying all death claims which *have accrued at the time of his appointment*, which claims are made preferred claims, and he may by such order be directed to make assessments upon all members liable therefor, but only to the extent to which they are liable according to the rates and plans and under the contract by which they are severally insured, to provide for such losses and expenses.

It is argued upon behalf of defendant that the provision last quoted should be construed as limiting the liability of the member to such obligations as his policy and the by-laws create, and that under these there is no liability, because there is no promise. It is urged that, by the articles and by-laws, a unilateral contract is provided for, and payment of assessments is optional, nonpayment being followed by a forfeiture of the policy. It seems obvious that the legislature intended that the death claim should constitute a valid obligation, yet this intention would be defeated if the trustees were under no legal obligation to levy, and the members under no obligation to pay, assessments. It would be an idle ceremony to authorize a receiver to levy assessments to pay preferred

claims if the assessed were under no legal obligation to pay them. By-laws and policies which established rates and plans susceptible of such construction would violate the spirit of the organic act, which must mean that the members in good standing when the death of a fellow member occurs are subject to assessment to pay the benefit, if it has any meaning. A similar question, though differing somewhat, perhaps, is discussed in *Russell* v. *Berry, supra.* There it was claimed that the organic act, which made members liable for losses, was modified and restricted by the articles which the incorporators had seen fit to adopt, but it was held that they could not have such effect.

The policy was issued upon an application signed by the defendant containing the following language: "I agree to make punctual payment of all dues and assessments for which I may become liable." It is contended that this is not a promise to pay assessments, because there is no legal liability to pay any assessments. Then this language is meaningless. It is the rule that language in a writing should be given effect if it can be consistently done. We must suppose that the parties understood that circumstances might arise creating a liability for assessment, or this promise would not have been made. Counsel cites four cases which are supposed to support his contention. All recognize the liability when there is a contract. *In re Protection Life Ins. Co.*, 9 Biss. 188, was a case where the question rested entirely on the contract, "and not upon the general laws or charter." Hence the court said, "The obligations of the parties must be found wholly in the terms of the contract," and it was held that there was no promise to pay in the contract. The case of *Lehman* v. *Clark*, 174 Ill. 279 (51 N. E. 222, 43 L. R. A. 648), supports defendant's contention, though there was no direct promise to pay, as in this case, but the by-law, which was a part of the contract, provided that, upon the death of a member, each member remaining should be assessed and

123 MICH.—6.

pay according to his class. The court held this to be a unilateral contract, upon the theory that payment was not obligatory, and said: "Under these authorities [principally Illinois cases], a contract for *insurance in any benevolent association* is a unilateral contract." This is the strongest case that defendant produces. In the *Equitable Reserve Fund Life Ass'n Case*, 131 N. Y. 369 (30 N. E. 117), it was said that the rights of members must be measured by the constitution, by-laws, and certificate, and the case sustains the proposition that a provision may be implied, as in any other case. The case differs materially from the one before us, and appears to have been a dispute over the disposition of funds on hand. One more case is cited in support of the defense, *i. e., Fulton* v. *Stevens*, 99 Wis. 307 (74 N. W. 803). The application contained the same language that is found in this case. It was held that, while a failure to pay an assessment seasonably would terminate the membership, it would leave the member legally liable nevertheless for the assessment, and for all other assessments as well, regularly made and noticed to him prior to such termination. See, also, *McDonald* v. *Ross-Lewin*, 29 Hun, 87; *Smith* v. *Bown*, 75 Hun, 231 (27 N. Y. Supp. 11); *Ellerbe* v. *Barney*, 119 Mo. 632 (25 S. W. 384, 23 L. R. A. 435); 2 Joyce, Ins. § 1270.

We have no doubt that the defendant was liable to assessment by the receiver for deaths which occurred previous to the filing of petition for dissolution.

The judgment is reversed, and a new trial ordered.

MOORE, LONG, and GRANT, JJ., concurred. MONT-GOMERY, C. J., did not sit.