BARROWS v. MUTUAL RESERVE LIFE INS. CO.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1907.)

No. 1,294.

1. WRIT OF ERROR—REVIEW—ESTOPPEL TO ALLEGE ERROR—ASSENT TO PROCEEDING—ASSUMPSIT—DEMURRER TO SPECIAL COUNT—DISMISSAL OF COMMON COUNTS.

Under the Illinois practice, where a demurrer has been sustained to a special count in a declaration in assumpsit, the plaintiff may dismiss as to the common counts and assign error on the judgment rendered on the demurrer, notwithstanding the fact that he might have proved the same facts alleged in the special count under the common counts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3611.]

2. INSURANCE—MUTUAL BENEFIT INSURANCE—VALIDITY OF ASSESSMENTS.

Where a mutual benefit insurance policy provided that the rate of assessment should be fixed by the board of directors of the company, the fact that the executive committee took part with such board in fixing assessments did not render the same illegal.

3. SAME—ACTION FOR BREACH OF CONTRACT—SUFFICIENCY OF DECLARATION.

Where a policy or certificate issued by a mutual benefit insurance company expressly made the application a part thereof, and also provided that the entire contract should be governed by, subject to, and construed only according to the constitution, by-laws, and regulations of the company and the laws of the state of New York, a declaration by a policy holder in an action against the company to recover damages for an alleged breach of contract by making illegal, unwarranted, and excessive assessments does not state a cause of action, where it does not set out either in extenso or in legal effect the application or the constitution or by-laws of the company, which are substantive parts of the contracts.

4. SAME—CONSTRUCTION OF CONTRACT—ILLEGALITY OF ASSESSMENTS.

Under a mutual life insurance policy which provided that death losses should be paid from assessments on the policy holders, and that such assessments should be made at such rates as might be established by the board of directors, the fact that the rates of assessment were increased far beyond those which the company or its agents represented would be required, or those given in a table printed on the policy but not made a part of the contract, does not impeach their validity, where it is not shown that they were higher than necessary to pay death losses, or were discriminative or fraudulently made.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

"Plaintiff in error (hereinafter styled "plaintiff") brings suit in assumpsit to recover moneys paid under protest upon assessments alleged to have been illegally made and collected from plaintiff by defendant in error (hereinafter styled "defendant") upon a certain certificate of membership in defendant company. The declaration contained one special count and the common counts. To the special count, defendant interposed a general demurrer; to the common counts, the general issue. On hearing, the demurrer was sustained; whereupon plaintiff elected to stand by his plea, and, without further order, the cause stood until called for trial, when plaintiff dismissed the common counts. Thereupon judgment was rendered for defendant. To reverse this judgment, the writ of error herein was sued out.

From the declaration it appears that defendant is one of the so-called "assessment life insurance companies"; that plaintiff duly became a member thereof, at the age of 51 years, on March 4, 1885, and, in consideration of the performance of certain conditions set out in the certificate of membership, application, constitution, by-laws, and regulations of defendant, and the laws

of the state of New York, was entitled to have the sum of $10,000 paid to the beneficiaries in said certificate named, within 90 days after his death. By the terms of the certificate, "mortuary assessments," so-called, were made payable at the home office of defendant in the city of New York within 30 days from the first week day of February, April, June, August, October, and December of each year, or from such other periods as the board of directors might from time to time determine. The said $10,000 was to be paid "from the death fund of the association at the time of said death or from any moneys that shall be realized to said fund from the next assessment to be made as hereinafter set forth, and no claim shall be otherwise due or payable except from the reserve fund as hereinafter provided. If at such date as the board of directors of the association may from time to time fix or determine for making an assessment, the death fund is insufficient to meet existing claims by death, an assessment shall then be made upon every member whose certificate is in force at the date of the last death assessed for, and said assessment shall be made at such rates, according to the age of each member. as may be established by the board of directors, and the net amount received. from such assessment (less 25% to be set apart for the reserve fund) shall go into the death fund." It is in express terms provided therein that the certificate or contract of membership shall be subject to all the provisions of the constitution and by-laws of defendant and the amendments thereto, and that the contract contained in the certificate and the application taken together shall be governed by, subject to, and construed only according to the constitution, by-laws, and regulations of defendant and the laws of New York. It is further shown from a table of rates, so-called, attached to said certificate, that the basis of the assessment rate of plaintiff at the date of said certificate was $2.25 per $1,000, and that plaintiff paid the same from that date up to February 28, 1889 (approximately four years), when a new table of rates was adopted, whereby his assessment was raised to $3.41 per $1,000. which increased rate he paid without protest up to June 12, 1895—something more than six years; that defendant, at the time of said increase, stated that he would never be called upon to pay more than $3.41 per $1,000; that the directors of defendant did on said last-named date, illegally and in violation of defendant's contract with him, reapportion the assessment rate of plaintiff, raising the same to the sum of $5.28 for each $1,000, which rate, in excess of the sum of $3.41, was illegal and void; that, on notice from defendant that if the same was not paid within 30 days from date of notice his rights under said certificate would be forfeited, and because he was on account of his age and state of health unable then to procure other insurance, he thereupon, but under protest, paid at said last-named rate up to February 1, 1898—something less than three years. The declaration further alleges that thereafter plaintiff was in like manner compelled to and did, under protest, pay at continually increasing rates, the basis of which was illegally fixed by defendant, until the same, on July 28, 1905, amounted to $15.50 on each $1,000; that seven of the calls for assessments were in excess of the bi-monthly calls, and were termed "special calls," and were illegal for that reason. The declaration further charges that said assessments were illegal for the reason that defendant induced many of its members to abandon the assessment policies and take level premium insurance, thereby depriving plaintiff of the benefit of his contract, and for the further reason that they were made by the directors and executive committee. instead of by the directors alone. The damages are laid at the sum of $7,500.

The assignment of errors is limited to the supposed error of the court in sustaining the demurrer and entering judgment thereon.

R. Adelbert Dewees and Frederick A. Brown, for plaintiff in error.
Chester E. Cleveland and Harry Goodman, for defendant in error.

Before GROSSCUP, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is urged by defendant that the plaintiff could have recovered, if at all, under the common counts, and that, having dismissed as to them after the demurrer was sustained to the special plea and before judgment thereon, he cannot assign for error that the court entered judgment. This is not the law as laid down by the Supreme Court of Illinois. The contrary was held in Hamlin v. Reynolds, 22 Ill. 207; Albany City Ins. Co. v. Keating, 46 Ill. 394; Hippach v. Makeever, 166 Ill. 137, 46 N. E. 790. We deem the point not well taken.

The main questions involved in this proceeding are whether defendant acted within the terms of the contract or certificate of membership existing between the parties hereto, in raising the rate of assessments and enforcing the collection thereof, as set out in the statement of facts. The objection that the assessments were made by the directors and executive committee, instead of by the directors alone, and that certain of the assessments were made on other than bimonthly calls, and termed "special calls," we do not consider well taken. In the first case, the directors acted in the matter, and the fact that the executive committee, whose membership the declaration does not disclose, joined with them, cannot, as pleaded, be held to vitiate the action of the directors. As to the second point, the certificate does not in terms limit the assessments to bimonthly calls, but does say that assessments shall be paid within 30 days from "such other periods as the board of directors may from time to time determine." There is nothing in the declaration to show any abuse of this authority. Nor is the allegation that defendant persuaded members to abandon the so-called "assessment policies" and take so-called "level premium insurance," to the detriment of plaintiff's rights, available as a defense in this proceeding as pleaded.

Whether defendant had the power, under the certificate of membership, to increase the assessment rate both in amount and frequency, must be gathered from that document. The bald allegation of the declaration that defendant stated that the rate would never exceed $3.41 per $1,000 cannot be held to vary the terms of the certificate. The liability of members to pay their portion of losses and liabilities under the organic law of the company cannot be varied by agreement between the company and a member. Russell v. Berry, 51 Mich. 287, 16 N. W. 651.

By its terms, the application is expressly made a part thereof. It is further therein provided that the same "shall be subject to all the provisions and stipulations contained in the constitution and by-laws of this association, with the amendments made or that may hereafter be made thereto. * * * The entire contract contained in this certificate and application, taken together, shall be governed by, subject to and construed only according to the constitution, by-laws, and regulations of said association, and the laws of the state of New York." What these are, and whether they affect the rights of the parties hereto, is nowhere set out in the pleadings, either in hæc verba or in legal effect, nor is the question as to whether the omitted parts modify or throw light upon the matters raised in this record anywhere therein negatived or even referred to. It cannot be seriously contended that the court below could have presumed that these omitted

portions of the certificate or contract would not have borne materially upon the matters in controversy. The presumption would, under the well-known rules of pleading, rather be that they would, if set out, tend to weaken plaintiff's case. The cause was disposed of on demurrer, and it was therefore very material that the court should have had the whole contract before it, either literally, in legal effect, or by proper allegations of negation. This rule is founded on reason, and has been followed in Condon v. Mutual Reserve, 42 Atl. 944, 89 Md. 99, 44 L. R. A. 149, 73 Am. St. Rep. 169; Gaines v. Supreme Council (C. C.) 140 Fed. 978; Polk v. Mutual Reserve (C. C.) 137 Fed. 273; Sulz v. Mutual Reserve, 145 N. Y. 563, 40 N. E. 242, 28 L. R. A. 379; Haydel v. Mutual Reserve, 98 Fed. 200; Barbot v. Mutual Reserve, 28 S. E. 498, 100 Ga. 681. The cases cited by plaintiff as holding to the contrary are not pertinent to the facts before the court. The proceedings in those cases were all based upon death or fire losses. In all of them, save the case of Troy Fire Ins. Co. v. Carpenter, 4 Wis. 20, the ruling was made with reference to the application alone. In the case from Wisconsin it was held that it was sufficient to set out the constitution, by-laws, etc., in legal effect. The cases hold that in a suit upon a policy to recover a death or fire loss the burden is upon the insurance companies to show fraud or misrepresentation in the application. In the case at bar, however, the question of the construction of the certificate is raised, and, according to that instrument, the documents in question are to be taken into consideration. They are made substantive parts of the contract for that purpose, and the declaration should have advised the court of their contents in some proper manner. This was not done, and the demurrer was therefore properly sustained. Were it otherwise, however, can it be said that the assessments were illegal or paid under duress? In clause 2 of the certificate it is said: "And such assessment shall be made at such rates, according to the age of each member, as may be established by the said board of directors." It is true that a table of rates appears upon the back of, or attached to, said certificate wherein the rate of assessment for persons of plaintiff's age of entry is given at the sum of $2.25, but the same is not made a part of the certificate, nor referred to. Plaintiff recognized the right of defendant's directors to change the rate of assessment by acquiescing in the increase thereof to $3.41. It seems clear that it was within the power of the directors to readjust rates of assessment whenever such charge was necessary in carrying out the objects of the organization, provided the same was done justly and equably as between the members of defendant company. The directors on June 12, 1895, passed a resolution whereby the assessment rates of members admitted to the association prior to January 1, 1890, were raised to "rates indicated by adding to the age of entry one-half the number of years from January 1 of the year of admission to January 1, 1895," according to a table of rates then in use, beginning with assessment No. 81. The table of rates referred to is not shown. Thus, plaintiff became a member March 4, 1885. From this last-named date to January 1, 1895, is 10 years less 2 months. Counting the fraction as a year, there would be 10 years. Taking one-half of this, plaintiff was as-

sessed at the rate fixed for a man 56 years of age, which appears from the declaration to have been the bimonthly sum of $5.28 upon each $1,000 of insurance, or the sum of $316.80 per annum on the $10,000. This rate held until January 1, 1898, when the directors, by resolution, fixed the rate of assessment upon the basis of the completed age. As above noted, it does not appear what the table of rates then in force was, but plaintiff's bimonthly assessments thereupon were fixed at $9.03 per $1,000, and then increased from one sum to another, presumably according to the table of rates fixed for his attained age, until on July 28, 1905, they were fixed at the sum of $15.50 each, or $90.30 per year, in addition to the special assessments. It is insisted by plaintiff that the resolution placing those whose date of entry was prior to January 1, 1890, in a class by themselves was arbitrary, illegal, and void, and that thereby his rate was inequitable and unfair to him with reference to the rates fixed for those going after January 1, 1890. Undoubtedly, any action of the board of directors looking to a discrimination in favor of or against any person or class of persons would be unfair and void. The record, however, does not disclose any facts upon which the court could have predicated discrimination. It was not advised of the rates charged to those who joined after January 1, 1890, and could not assume that the classification of 1890 inflicted any wrong upon plaintiff. Nor is there any data in the record from which the court could have found that the assessments were excessive. That they were very heavy is evident; but, so far as the record shows, they must be deemed to have been only such as were adequate for the satisfaction of recurring death losses and such other items as were chargeable thereto. It may well be that those who managed associations of this kind, as well as those who became members thereof, did so with the idea that the low rates would continue, at least measurably, and they may have so expressed themselves. But it is a matter of common knowledge that as the members increase in age the death losses must also increase, and, as a consequence, the assessments. Even assuming that new blood were constantly and uncomplainingly being infused into the membership, yet, in the absence of a provision for a very substantial reserve fund, the cost must rapidly advance. Taking further into consideration the fact that the younger members may reasonably object to making good the depletions made by the death of the older members, it is apparent that some adjustment must be made to equalize the cost, otherwise no young members could be obtained, and dissolution would necessarily follow. The present predicament of plaintiff must be attributed to a mistake of judgment, and not to any illegal act of defendant, which operates simply as the agent of the members in conducting the business for which it was organized. So far as it is made to appear herein, defendant's directors acted within their powers and to the best of their judgment. The courts will interfere with the directors only when there is a manifest abuse of discretion. Supreme Lodge K. of P. v. Knight, 117 Ind. 489, 20 N. E. 479, 3 L. R. A. 409. Whatever of hardship is disclosed in the situation is due to defects in the system. We find nothing in the certificate of membership which prescribes any other limit to the powers of the defendant in fixing rates and making assessments

151 F.—30

than that the same shall be commensurable with its needs in carrying out its purposes, provided the same be equably and fairly conducted. As stated in Iverson v. Minnesota Mutual Life Ins. Co. (C. C.) 137 Fed. 268:

"A member had no right to insist that the association should continue its business upon a basis which would in all probability result in bankruptcy."

The further contention of plaintiff that the assessments were paid under duress is not well taken. If they were void assessments, he was not bound to pay them in order to keep his certificate in force. Indeed, he kept up the payments for a number of years with full knowledge of the facts. What he has paid in has been distributed according to his contract. This clearly does not constitute payment under duress. Silliman v. United States, 101 U. S. 465, 25 L. Ed. 987; Howard v. Mutual Reserve, 125 N. C. 49, 34 S. E. 199, 45 L. R. A. 853; Dillon on Municipal Corporations, § 947; Lamson v. Boyden, 57 Ill. App. 232; Walser v. Board of Education, 160 Ill. 272, 43 N. E. 346, 31 L. R. A. 329.

The judgment of the Circuit Court is affirmed.