Fulton vs. Stevens.

FULTON, Assignee, Appellant, vs. STEVENS, Respondent.
SAME, Respondent, vs. SAME, Appellant.

*March 26 — April 12, 1898.*

*Mutual life insurance: Forfeiture: Nonpayment of assessments: When liability of member terminates.*

The contract of membership between defendant and the Wisconsin Odd Fellows' Mutual Life Insurance Company contained a promise on the part of the former to pay assessments, made according to the charter and by-laws of the company, which provided, in substance, as follows: Whenever the secretary of the company shall deem it necessary to replenish the policy fund, he shall make an assessment upon the members of the company by the entry of an order in a book to be kept for that purpose. Within twenty days thereafter he shall notify the members in writing of such assessment. Each member shall be bound by the notice from the time of its deposit in the post office, or delivery to, or the leaving of it with, him, and he shall thereby become liable to pay the assessment within sixty days from the date of the notice. In case of a failure to pay any such assessment within such time, the defaulting member shall forfeit all right under his certificate, and the same shall be void as to the company. Defendant failed to pay an assessment duly levied and noticed to him, within the time required as aforesaid. Other assessments were made and duly noticed before the expiration of such time, and still other assessments were made and noticed thereafter. *Held:*

(1) That the making of the assessment and giving notice thereof, to replenish the policy fund,— not the death of the member,— fixed the liability of the defendant under his contract.

(2) That he is liable for all assessments made and of which he was duly notified before his membership ceased, by reason of failure to pay an assessment within sixty days, as required by his contract, but not for the assessments made thereafter.

[Syllabus by MARSHALL, J.]

APPEALS from a judgment of the county court of Winnebago county: C. D. CLEVELAND, Judge. *Affirmed.*

Action to recover assessments on several benefit certificates on a mutual insurance policy issued by the Wisconsin

Odd Fellows' Mutual Life Insurance Company. The judgment was for the plaintiff on part of the assessments, and for defendant as to the balance. The amount involved being under $100, the questions to be considered appear from the certificate of the trial judge, which is, in substance, as follows:

(1) June 15, 1881, defendant made three written applications for membership in the Wisconsin Odd Fellows' Mutual Life Insurance Company, plaintiff's assignor, each containing (a) a promise that the applicant, if received, would punctually pay all assessments for which he should become liable, and comply with the by-laws, rules, and regulations of the company, and such as should thereafter be adopted by its board of directors; (b) a stipulation that the application should form the basis of the contract with the company, and that any neglect to pay the assessments made by such company within sixty days after notice thereof should vitiate the certificate of membership and forfeit all rights under it, in the absence of a reinstatement of the applicant to membership according to the regulations of the company.

(2) On each such application a certificate of membership was issued to the defendant, specifying, among other things, that it was issued upon the payment of one dollar, and in consideration of the representations made in the application, which was made a part of such certificate; that the certificate was issued and accepted with the express understanding that any violation of any agreement made in the application, by the assured, should render such certificate void and of no binding force upon the company whatever.

(3) The charter of the company contained, among other things, substantially the following: (a) Whenever the amount in the policy fund shall be insufficient, in the opinion of the secretary, to pay outstanding losses, the secretary shall make an assessment upon the members of the company to replenish such fund, and notify them thereof in the manner provided

Fulton vs. Stevens.

in the by-laws, and every such member shall pay to the secretary his or her assessment, within sixty days after the date of notice thereof, and if any member shall fail in that regard, his or her membership shall cease, and the certificate thereof, and all the rights under it, be forever forfeited; provided, however, that the member may be reinstated and the rights under the certificate revived, in the manner, and only in the manner, provided in the by-laws and sec. 12 of the charter; (b) the certificate of membership shall be void and of no binding force or effect upon the company, and all the rights under it forfeited, if the assured shall fail to pay any assessment made upon him or her, within sixty days after the date of the secretary's notice of such assessment.

(4) The by-laws of the company contained the following provisions, in substance: (a) In case of a necessity to replenish the policy fund by an assessment, as provided in the charter, the secretary shall enter an order in a book kept for that purpose, to the effect that, the amount in such fund being insufficient in the opinion of the secretary to pay outstanding losses, an assessment to be 'known as assessment No. ——, of the year ——, is made and levied upon all the members of the company to replenish such fund; (b) within twenty days after the entry of such order the secretary shall notify all members thereof, by depositing at the post office in the place where his office is located, written or printed, or partly written and partly printed, notices of such assessment substantially in the form now used for that purpose, addressed to the respective members, or to the persons respectively designated by them in writing, filed with the secretary as their agent to receive notices for them, or by delivering such notice to, or leaving it with, the person so designated. Each member shall be bound by the notice from the time of its deposit in the post office, or delivery to, or the leaving of it with, him or her, and shall thereby become liable to pay the assessment to the secretary within

Fulton vs. Stevens.

sixty days of the date of the notice, and in case of failure so to do by any member, such member shall forfeit all rights and privileges under his or her certificate of membership, and such certificate shall be utterly void and of no effect on the company; (c) on making the next assessment after any member shall have lapsed, the secretary shall mail him a notice, together with a request for reinstatement, and health statement, as follows:

### NOTICE OF LAPSE.

"Milwaukee, Wis., ——.

" To ——: According to our books you have no credit for assessment No. ——, which was due ——. According to our charter and by-laws your certificate has lapsed. It is possible that it is an oversight in you or a mistake with us. Should you be the one at fault, please sign the inclosed, if in good health, and on receipt of the same with the amount due, receipt will be forwarded."

### "HEALTH STATEMENT.

" To the Wisconsin Odd Fellows' Mutual Life Insurance Co.: Having been insured in your company by certificate No. ——, division ——, which has been forfeited by reason of nonpayment of assessments, and being desirous of having the same restored to risk, I do hereby certify and affirm that my health is good, and that I accept the renewal on the express condition, that if the certificate is restored, the restoration shall be void, unless I am at this time in good health."

(5) June 1, 1896, and June 15th, July 1st, August 1st, and September 1st, thereafter, assessments were duly levied and notices thereof sent to the defendant in accordance with the foregoing. The notice was in the following form: " You are hereby notified that the policy fund being insufficient to pay outstanding losses, an assessment to be known as

Fulton vs. Stevens.

No. ——, of the year ——, has been made and levied upon all the members of the company to replenish such fund, and the amount of your assessment, so made and levied in divisions ——, is ——, which, as provided by the charter and by-laws, is now due and must, under penalty of forfeit, be paid to the secretary or local agent within sixty days after date of notice. We have received notice and proof of death of the following named members since our last assessment." The notice further contained an extract from sec. 12 of the charter, to the effect that every certificate shall be void and of no effect upon the company, and all rights under it be forfeited, upon failure of the member to pay assessments made upon him, within sixty days after the date of the secretary's notice thereof. No forfeitures can be waived otherwise than by written statement under the seal of the company, signed by the secretary, stating in plain terms that all forfeitures up to date are hereby waived. No assessment notice shall be mailed to any member in arrears. No agent is authorized to receive assessments after due, without health certificate.

(6) Defendant never paid any of the assessments mentioned.

(7) On the 1st day of September, 1896, the company sent to the defendant the following notice: "According to our books you have no credit for assessment No. 170, 171, 172, 173, which were due August 1st and July 15th. According to our charter and by-laws your certificate has lapsed. It is possible that it is an oversight in you, or a mistake with us. Should you be the one in fault, please sign the inclosed, if in good health, and on receipt of the same, with amount due, receipt will be forwarded." A form for health certificate and request for restoration was inclosed.

(8) All deaths on account of which the several assessments were made, with the exception of three, occurred prior to the 1st day of August, 1896.

(9) The company never reckoned as assets, assessments

made on the certificate of a member within sixty days prior to a forfeiture of his membership, and never attempted to collect any such assessments, unless by sending notice to members similar to that sent defendant September 1, 1896.

(10) During the course of the company's business, prior to the assessments in question, upwards of $12,569.98 was paid by members whose memberships were thereafter forfeited. Notice of this fact was given to members in the twenty-third annual report of the directors, which stated that none of such members retained any claim upon the company.

(11) On the 11th day of February, 1897, the company made an assignment for the benefit of creditors, to *John L. Fulton.*

The questions of law certified on the foregoing statements of fact are as follows:

(1) Was plaintiff entitled to judgment as rendered?

(2) Was the plaintiff, upon the facts, entitled to a judgment for a further sum of $13.20, the amount of assessments 176, 177, 178, and 179?

The assessments for which judgment was rendered were those made for death losses which occurred before defendant defaulted on any assessment, and made before the forfeiture occurred. The assessments for which judgment was refused amounted to $13.20, and were made after the certificate was forfeited.

For the plaintiff there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Phillips & Hicks,* of counsel, and oral argument by *George Lines.* They argued, *inter alia,* that on joining the company the defendant became by contract bound to contribute his share of losses occurring during his membership, by paying the assessments made therefor. His liability to do so is expressly declared in the charter and by-laws. *Ellerbe v. Barney,* 119 Mo. 632; Niblack, Ben. Soc. & Acc. Ins. §§ 249, 308; *Clark v. Lehman,* 65 Ill. App. 238; *New Era Life Asso. v. Rossiter,* 132 Pa. St.

314; *McDonald v. Ross-Lewin,* 29 Hun, 87; *Smith v. Bown,* 75 id. 231; 16 Am. & Eng. Ency. of Law, 74. It is the happening of losses during his membership which fixes a member's liability to assessments. *Seamans v. Millers' Mut. Ins. Co.* 90 Wis. 490; *Davis v. Shearer,* id. 250; *Davis v. Parcher & J. & A. S. Co.* 82 id. 498; *Mutual Benefit L. Ins. Co. v. Jarvis,* 22 Conn. 133; *Vanatta v. N. J. Mut. L. Ins. Co.* 31 N. J. Eq. 15. That liability continues until an assessment has been made to cover the losses. *Ionia, E. & B. F. M. F. Ins. Co. v. Otto,* 97 Mich. 522; *Ionia, E. & B. F. M. F. Ins. Co. v. Ionia Circuit Judge,* 100 id. 606. The failure of a member to pay his assessment within the time limited, though it forfeits his rights, does not relieve him from any of his obligations. May, Ins. § 553; *Stylow v. Wis. O. F. M. L. Ins. Co.* 69 Wis. 224. Neither withdrawal nor forfeiture will relieve him from liability to assessment to pay losses which occurred before such withdrawal or forfeiture. *Korn v. Mut. Ass. Soc.* 6 Cranch, 192; *Seamans v. Millers' Mut. Ins. Co.* 90 Wis. 490.

*F. W. Houghton,* for the defendant, contended that the contract of a member was only in the alternative, i. e. to pay assessments or to forfeit all rights. Niblack, Ben. Soc. § 248; *Chicago Mut. L. I. Asso. v. Hunt,* 127 Ill. 257, 277; *In re Protection L. Ins. Co.* 9 Biss. 188; *Rood v. Railway P. & F. C. M. B. Asso.* 31 Fed. Rep. 62; *Burdon v. Mass. S. F. Asso.* 147 Mass. 360, 370; *Farmer v. State,* 69 Tex. 561; 2 Bacon, Ben. Soc. § 378; *Newman v. Covenant Mut. Ben. Asso.* 72 Iowa, 242. The society could not receive assessments after a membership had been terminated by forfeiture without violating its charter.

MARSHALL, J. This case turns on the meaning of the insurance contract. It must go without question that if the facts were such as to permit the application of the doctrine of practical construction, or estoppel thereby, the defend-

ant could not be held liable for any of the assessments sought to be recovered in this case. Such would be the result of following the uniform course of the administration of the affairs of the insurance company by its officers, from the time of its organization; but as we view the contract of insurance, its provisions are clear and their meaning unmistakable, therefore such meaning must be taken as embodying the intention of the parties at the inception of such contract, and that intention must prevail. The familiar doctrine, that where the meaning of language is plain courts must hold to that, and not go outside and make contracts for parties in order to meet difficulties which they failed to anticipate and provide against, is of universal application. The office of judicial construction, whether resorted to in order to give effect to practical construction or otherwise, has no legitimate purpose other than to carry out the intention of the parties, which they sought to express by the contract when made. Therefore, after all, unless such intention can be determined from the contract itself, without violating the rules of language or of law, by the aid of the lights proper to be resorted to for that purpose, including that of the construction the parties gave to the contract when that is proper to be considered, it cannot be adopted and judicially carried out as that which the parties had in mind at the outset. So, as said in *Travelers' Ins. Co. v. Fricke*, 94 Wis. 258, in effect, unless language is of doubtful, ambiguous, or uncertain meaning, the doctrine of practical construction has no application. Customary disregard of plain language, however long continued, does not furnish a rule to guide judicial construction.

The contract in question, embraced in the certificate, the application therefor, and the by-laws and charter of the company, contains the following plain provisions: (1) An absolute, unconditional promise on the part of the assured to pay all assessments for which he may become liable,

within sixty days after the date of notice thereof; (2) that when it shall become necessary to replenish the policy fund, an assessment for that purpose shall be made on all the members of the company; (3) that each member shall be bound by the notice from the time of its deposit in the post office and delivery to the member, as provided by the by-laws, and he shall thereby become liable to pay the assessment referred to therein within sixty days after the date thereof; (4) that in case of failure to pay, the member shall forfeit all rights under his certificate of membership, and it shall be no longer binding on the company.

Now, if we look only to the plain language of the provisions of the contract specially referred to, no reasonable controversy can exist but that the parties thereto intended that failure to pay an assessment within sixty days after the date of notice thereof, given as required, should operate to terminate the membership of the defaulting party, but leave him legally liable, nevertheless, for the assessment, and for all other assessments as well regularly made and noticed to him prior to such termination. That is all expressed in words too plain to require interpretation or construction.

It must not be overlooked that the assured did not agree to pay assessments from time to time to cover death losses as they occurred, so no reason is perceived why he should be liable merely because of the occurrence of deaths before the lapse of his membership. What he agreed to do was to pay assessments made during the existence of his membership, to replenish the policy fund. The regular making of an assessment for that purpose, and the sending of the notice thereof, fixed his liability. No other element whatever entered into it.

It appears from the record that a double assessment, so called, was duly made on the defendant on the 1st day of June, 1896, due notice of which was given to him, dated on that day. He did not pay such assessment within sixty days

after the date of such notice, which expired on the 31st day of July, 1896, and his membership in the company then thereby terminated.   After the making of such assessment, and before the assured ceased to be a member of the company, a second double assessment was made June 15, 1896, and another July 1, 1896, all aggregating $19.80.   On the 1st day of August, 1896, the defendant was not a member of the company; nevertheless there was, on that day, another double assessment made against him, and on the 1st day of September following, a like assessment was made, all aggregating $13.20.   The lower court gave judgment in plaintiff's favor for the $19.80, and in defendant's favor on the claim for $13.20 additional.   That was in exact compliance with the plain letter and meaning of the contract, as before stated.

Many authorities are cited for our consideration, in support of views contrary to those above expressed, some by the plaintiff to the contention that defendant is liable for assessments made after the termination of his membership, and others by the defendant to the contention that the contract of insurance was unilateral in character, and that the termination of it by failure to pay extinguished all claims of the company to recover assessments.   Such of the authorities as touch the question under discussion at all, coincide with the conclusion to which we have arrived.   A brief reference to a few of the most important cases cited by counsel will clearly demonstrate that.

In *Ellerbe v. Barney*, 119 Mo. 632, there was a controversy as to whether the contract contained a promise to pay assessments.   The majority of the court held to the affirmative on that point.   If the decision in that regard was right, the promise was not to pay for the benefit of a policy fund, out of which to pay losses generally, but to pay an assessment of $1.60 on the death of each member, happening during the membership of the assured.   The scheme of insurance

did not contemplate a policy fund as in this case. The liability under the contract was plainly fixed, not by assessments and notice thereof, but by the death of a member of the company in the class in which the assured was located by the terms of his certificate. The court held that the assured was liable to pay the assessment agreed upon for the death of each member, which occurred before his policy lapsed, according to the plain terms of the contract. The dissenting opinion by Chief Justice BLACK, concurred in by Justices BRACE and BURGESS, cited confidently by the defendant here for reasoning to sustain the contention that the scheme of insurance under consideration contemplated payment of assessments as mere conditions precedent to a continuation of membership, and not compliance with legal liabilities, does not apply, because the premises upon which the learned judge based such reasoning do not fit this case. He proceeded upon the theory that the contract there under consideration did not contain a promise to pay assessments. The opinion as to the law is perfectly consistent with that of the court to the point that where there is an unconditional agreement to pay, there is a legal liability as to all calls made according to the terms of the contract during the life of the membership. After citing *In re Protection L. Ins. Co.* 9 Biss. 188, upon which the defendant here chiefly relies, the chief justice quoted from Bacon on Benefit Societies, as correctly stating the law, as follows: "The payment of the premiums or assessments is only a condition precedent to the liability of the company. The assured does not promise to pay the premiums, and the company only promises to pay if it has received the agreed consideration, therefore the assured may pay or not as he pleases. He has the perfect right to do either, and need give no excuse for his choice. If he does not pay the contract is ended. *It follows, therefore, that the premium or assessment is only a debt when there is an absolute promise to pay embodied in the contract.*" As

there was such absolute promise to pay embodied in the contract under consideration, manifestly, that doctrine renders defendant legally liable, as determined by the trial court, for the assessments made before the expiration of his membership, and not liable for those made thereafter.

In *New Era L. Asso. v. Rossiter*, 132 Pa. St. 314, the assignee of the insurance company brought suit for unpaid assessments. The contract contained a promise to pay assessments for deaths happening during the life of his membership, payment of such assessment to be made within thirty days after mailing the notice thereof, showing a statement of the death for which it was made. The policy lapsed for failure to pay an assessment. The court held that, by unmistakable language in the contract, the assured was liable for all death losses which occurred before his membership terminated.

In *McDonald v. Ross-Lewin*, 29 Hun, 87, the contract contained a promise to pay assessments, according to a schedule of rates, on the death of each member, happening during the membership of the assured, and a provision that such membership should cease upon failure to pay an assessment within the time required by the contract. The court held that the failure to pay, *ipso facto*, determined the membership, but left the member liable, nevertheless, for death losses which happened before such termination, whether assessments were made before or after that time. The decision went no further than the plain words of the contract, as under it the death of a member fixed the liability to pay an assessment, and there was an absolute promise to pay upon the happening of each such occurrence, while the assured remained in the company.

Further consideration of authorities is deemed to be unnecessary. We may safely venture to say that no case can be found, certainly none has been brought to our attention, which holds that a member of an insurance company can

escape payment of an assessment made during the life of his membership, where the contract contains an absolute promise to pay, or that supports the claim of liability for assessments made after the termination of the membership, where each call, under the scheme of insurance, is for the benefit of a policy fund out of which to pay death losses, and the liability is fixed by the assessment and notice instead of being made to pay particular death losses, and is fixed by the call for such purpose. All of the authorities cited on both sides, on both appeals, rightly understood, sustain the conclusions we have reached, that defendant was liable, under the plain terms of his contract of insurance, for the assessments made while he was a member, and not liable for those made afterwards. Such was the decision of the trial court. The judgment must therefore be affirmed on both appeals.

*By the Court.*— The judgment of the county court is affirmed.