FELTON, Appellant, vs. STACEY and wife, Respondents.

*November 15—December 13, 1921.*

*Vendor and purchaser: Construction of contract: Purported dupli-*
*cates not identical: Construction against person preparing*
*document: Election to declare whole sum due: Notice.*

1. Where the terms of a contract for the sale of land were am-
   biguous, the findings of the trial court, based on credible evi-
   dence, will not be reversed.
2. A contract ambiguous on its face must be construed in the light
   of the surrounding facts and circumstances, the situation of
   the parties, and all of the material evidence in the case.
3. Duplicate contracts prepared by a vendor of land and revised
   by him to comply with the vendees' wishes, where ambiguous
   and where the two copies are not identical, will be construed
   most strongly against the person who prepared them.
4. Where by the contract certain initial payments were to be made
   in instalments, notice by the vendor of his election to exercise
   an option to foreclose on account of the failure to pay an
   instalment renders the unpaid instalments of the initial pay-
   ment and the remainder of the purchase price due.
5. A vendor or mortgagee, on default in payment of an instalment
   of a debt, if the security so provides, may on notice declare
   the whole unpaid amount due.
6. Where the purchaser defaulted in the payment of an instalment
   of the initial payment for land and was notified by the vendor
   of his election of the option to foreclose in accordance with
   the contract of sale, but that he would not foreclose if the
   instalment was paid within a short time and a substantial
   amount paid on the principal, failure to make such substantial
   payment on the principal, as required by the notice, entitled
   the vendor to foreclose.

APPEAL from a judgment of the circuit court for Oconto
county: W. B. QUINLAN, Circuit Judge. *Reversed.*

Action to foreclose land contract.

The plaintiff, the owner of the real estate in question, a
short time prior to January 3, 1919, negotiated with the de-
fendant *Frank Stacey* for the sale of the same for the sum
of $12,000. *Stacey* had no money with which to make the
initial payment, but was the owner of certain personal prop-

erty worth about $2,500, and plaintiff suggested that he was willing to take a chattel mortgage on the personal property to secure payment of the sum of $2,000.

A few days later the plaintiff and defendants met, and the plaintiff brought with him printed forms of land contracts, fully filled out, prepared to carry out the proposed deal. One of the contracts was submitted to the defendant *Frank Stacey*, who read the same, and when he came to that portion of the contract which provides for the payment by the party of the second part of the taxes, he stated, in substance, that there was no use to go any further because he could not pay the interest and taxes and $1,000 a year, and that $1,000 would be all he would be able to pay, and that such sum must cover interest and taxes. The defendant *Frank Stacey* testified that thereupon plaintiff replied that he would pay the interest and taxes.

The contract as originally submitted provided for the payment of the sum of $12,000 as follows: $2,000 at the ensealing and delivery thereof, to be paid by one note for $250 payable in four months; one note for like amount payable in seven months; one for $500 payable in ten months; one for $500 payable in sixteen months; and one for $500 payable in twenty-two months; balance by assuming two mortgages of $8,000, and the balance of $2,000 by a renewal of the chattel mortgage executed to secure the notes given for the down payment. The contract then proceeded to recite that the payments when so made were to apply, when fully completed, as the purchase price of the real estate described in the complaint.

The contract further contained the usual provisions for insurance on the buildings; a tax clause wherein the parties of the second part agreed to pay all taxes, general or special, which had been assessed on the premises since January 1, 1919, and until the purchase money be fully paid.

The contract also contained an election of option to de-

clare the whole amount of the principal and interest due in the event of defendants' default to meet any of the provisions of said contract. And it was further provided in said contract that upon such default and the declaration of such election of option the whole amount of principal and interest would thereupon become due and payable in the same manner as if the whole of said principal sum had been made payable at the time of such default.

It was further provided by said contract that the party of the first part, in the event of the payment of the sum of $12,000 with interest at the times and in the manner specified therein, would, on demand thereafter, cause to be executed and delivered to the party of the second part, etc., a good and sufficient deed in fee simple of the premises in question, free and clear of all legal liens and incumbrances except the taxes therein agreed to be paid by the party of the second part.

Pursuant to the foregoing colloquy between the parties, the plaintiff drew a line through that portion of the contract which provided for the payment of the taxes by the party of the second part, and also drew a line through the words and figures "of $2,000," intended in the original contract to represent the balance to be secured by a renewal of the chattel mortgage executed to secure the notes above referred to.

After the description of the property the following paragraph was inserted:

"It is mutually agreed that the party of the first part pay all taxes and the interest on $8,000 out of the payments made by second party, and the balance of such payments made to be applied on the principal."

All of the notes given for the initial payment were seasonably paid with the exception of the last note for $500 which became due on November 3, 1920.

On November 30, 1920 (the defendants at that time being

in default in the payment of the note becoming due on the 3d day of the same month), the plaintiff caused to be served upon the defendants the following notice, to wit:

*"Mr. Frank Stacey,*                              Nov. 30, 1920.
      "Abrams, Wis.

"Dear Sir:   Please take notice that *J. N. Felton,* our client, hereby elects, pursuant to the provisions of the land contract made and entered into with him on the 3d day of January, 1919, to declare due all of the notes given by you for payment of the purchase price, by reason of your failure to pay principal and interest due on November 3, 1919.

"It is not *Mr. Felton's* intention in doing this to commence foreclosure proceedings at all, providing this note is paid within a short time and a substantial amount is paid upon other principal.   He merely wishes to take this step in order that he may not lose any rights because of delay in proceeding to action."

This notice was signed by plaintiff's attorneys.   Subsequent to the giving of the notice above referred to the defendants paid the last note for $500, but failed to make any further payments of principal, and thereafter the action to foreclose the land contract in question was begun by the plaintiff.

Upon the trial of the action the trial court found, among other things, that the defendants were entitled to a deed of the premises in question free and clear of all incumbrances excepting two mortgages aggregating $8,000, which mortgage indebtedness the defendants shall assume upon delivery to them of a deed to said premises; and that the plaintiff, upon delivery of said deed to the defendants, together with abstract of title showing a good and merchantable title free and clear of all incumbrances excepting the mortgages aggregating $8,000, and free and clear of all tax liens, is entitled to a note executed by the defendants in the sum of $2,000, payable on or before two years, with interest at the rate of six per cent., such note to be secured by a chattel mortgage on the same personal property described in the original chat-

tel mortgage, and that the plaintiff recover the costs of the action.

The court also found that the defendants are entitled to a receipt showing payment of the 1920 taxes and to receipts showing the payment of interest on the real-estate mortgages up to the time of the delivery of the deed. The defendants were given twenty days from April 25, 1921, to make their election to comply with the terms of the contract in question as construed by the court. Such election was thereupon timely made.

Both plaintiff's and defendants' contracts were offered in evidence, but there being a material difference between said contracts, the plaintiff's contract containing material changes not included in the defendants' contract, the trial court adopted defendants' contract, and the correctness of such ruling is not now challenged by plaintiff's counsel.

Judgment was thereupon entered in accordance with such findings of the trial court.

For the appellant there were briefs by *Kittell, Jaseph & Young* of Green Bay, and oral argument by *Lynn D. Jaseph.*

For the respondents there was a brief by *Classon & Whitcomb* of Oconto, and oral argument by *A. J. Whitcomb.*

DOERFLER, J. In construing Exhibit 1 (defendants' contract) it first becomes necessary to consider the objects and purposes the parties had in mind, when that portion of the contract was stricken out which obligated the party of the second part to pay the taxes. It is not disputed by the plaintiff that he was to pay the taxes on the property until the maturity of the contract and also the interest on the mortgage indebtedness of $8,000, but it is claimed by him that such payments were to be made out of the payments made by the party of the second part, and that such payments when so made constituted so much additional principal due him, which amount was to be added to the balance of the principal sum to be secured by the renewal of the chattel mortgage.

On the other hand, it is contended by the defendants that this portion of the contract was stricken out pursuant to an agreement between the parties that the taxes and interest referred to were to be paid by the plaintiff and were not to be charged back against the defendants. The testimony also shows that the defendants understood the contract to mean that, after the plaintiff had paid the taxes and the interest on the mortgage indebtedness, the balance of the payments were to be applied by way of reduction of the $2,000 to be secured by a renewal of the chattel mortgage.

In view of the testimony heretofore detailed, the striking out of the provisions for the payment of taxes by the party of the second part is very significant and persuasively indicates that these taxes were to be assumed and paid by the plaintiff and not charged by him to the defendants as so much additional principal. If the plaintiff's contention with respect to the taxes is correct, then the defendants would have to pay the same indirectly, the plaintiff merely acting as defendants' agent in advancing the money for their benefit. Further, the striking out of the word "of" and the sum "$2,000" is indicative of an understanding between the parties that the balance after the payment of the first $2,000 would not be $2,000. Under the theory advanced by the plaintiff the balance would be more than $2,000 and under that advanced by the defendants it would be less than $2,000.

We now come to a very material insertion in the contract after it had been prepared, which is the one immediately following the description of the premises, and which provides:

"It is mutually agreed that the party of the first part pay all taxes and the interest on $8,000 out of the payments made by second party, and the balance of such payments made to be applied on principal."

The provision last referred to, standing alone, would strongly indicate that the balance of $2,000 of principal,

after the payment of the taxes and interest, would have to be applied to whatever principal there was still left and unpaid, exclusive of the amount due upon the mortgage indebtedness of $8,000.

The trial court having construed the agreement to the effect that the plaintiff was to pay the taxes on the property and the interest on the mortgage indebtedness, and that the payment of such taxes and interest was not to be charged up against the defendants, and there being credible evidence to sustain such finding, this court is not prepared to hold that such finding is contrary to the clear preponderance of the evidence. Such finding of the trial court is also in harmony with the idea that the total amount to be paid by the defendants is the sum of $12,000, as is provided for by the contract.

We have not arrived at this conclusion without considerable difficulty. A contract as in the instant case, ambiguous on its face, must be construed in the light of the surrounding facts and circumstances, the situation of the parties, and all of the material evidence in the case. The court has endeavored to place itself as nearly as possible in the situation of the parties at the time of the execution of the contract, and has considered the important fact that this contract was prepared by the plaintiff or at his instigation, and was revised by him after the objections had been interposed as heretofore detailed by the defendants. It was then incumbent upon the plaintiff to submit such an unambiguous contract for final execution as would substantially comply with the intentions of the parties in order that their wishes might be properly carried out. This the plaintiff has failed to do. On the contrary, he not only left with the defendants a contract ambiguous on its face, but has submitted his own contract, which contained material changes, differing substantially from the contract delivered to the defendants. Such a contract must be construed most strongly against the party

preparing it or employing the words concerning which doubt arises.    13 Corp. Jur. p. 545, § 516; 8 Elliott, Contracts, § 1528.

"As a general rule the language of a contract, in case of ambiguity, should be interpreted in the sense that the promisor knew, or had reason to know, that the promisee understood it."    13 Corp. Jur. p. 523, § 484.

It is to be regretted that the parties, in the drafting and revision of a contract involving a large sum of money and substantially making disposition of a large part if not all of their earthly possessions, did not see fit to secure the advice and assistance of legal counsel.    The drafting and revising of a land contract involves clearly a matter within the field of the practice of the law.    In fact, the drafting of such a document for pay, by one not licensed to practice the profession, constitutes a serious infraction upon the provisions of the statutes.    Had these parties seen fit to expend a small sum of money to obtain legal assistance, the deplorable condition presented by the contract in question, in all reasonable probability, would not have arisen.    The efforts of laymen in this regard frequently result not only in a great economic waste, but in considerable ill-feeling, trouble, and worry on the part of litigants.

Under the views heretofore expressed, we hold that the contract as above detailed was properly construed by the trial court.

It is contended by plaintiff's counsel that the service of the notice aforesaid, after defendants' default, constituted a sufficient declaration of notice of election of option as provided for by the contract, and that pursuant to such service the total amount of unpaid principal, exclusive of the mortgage indebtedness, immediately thereafter became due and payable.

On the part of the defendants it is claimed that such notice merely declares due the notes given for the initial payment. Such notice also contains the provision:

"It is not *Mr. Felton's* intention in doing this to commence

a foreclosure proceeding at all, providing this note is paid within a short time, *and a substantial amount is paid upon the principal.*"

The provision of the notice last referred to is strongly indicative that what was intended by the plaintiff was a declaration of election of option, not only to declare due the last instalment of the first series of notes, but also the entire principal, exclusive of the two mortgages. That it was so understood by the defendants is clearly shown by the testimony of *Frank Stacey.*

With reference to a contract like the one in question, it is held in *Julien v. Model B., L. & I. Asso.* 116 Wis. 79, 92 N. W. 561, that:

"This court stands alone, or nearly so, in holding that notice of election should be given the debtor as a condition of treating the contract as fully matured; but its decision in that regard is not based upon a construction of the contract. 2 Pingrey, Mortg. § 1539; Jones, Mortg. § 1182a, and cases cited." The rule requiring the service of such a notice is not based upon judicial or other authority, but was declared "as a rule of equity, to be applied where a person seeks its jurisdiction to enforce his mortgage to the full extent, under an option so to do, by reason of some default in the terms thereof."

In *Basse v. Gallegger,* 7 Wis. 442, it is held:

"It seems to us but just and proper to require the mortgagee, in cases like the present, to exercise his election, and give notice thereof to the mortgagor, before bringing suit."

In view of the fact that the notice above set forth was duly served, and the message it conveyed to the defendants, and the understanding they derived therefrom, we are of the opinion that the equitable rule above set forth has been fairly complied with.

The right of a vendor in a land contract, and of a mortgagor under a mortgage containing provisions similar to the one contained in the contract in question, to declare the whole amount due upon default, is too well established by

authority to require any further comment.   See 27 Cyc. 152, 153; 2 Jones, Mortgages, §§ 1184–1186.

Under the authorities cited, in case of default the whole amount of principal and interest becomes due upon the declaration of election of option and the service of proper notice, as much so as though the instrument itself in express terms provided for the amounts becoming due at that time. The last of the first series of notes having been paid after the service of the notice of election of option, and no substantial portion of the remaining principal having been paid, in accordance with the requirements of such notice, the plaintiff is clearly entitled to a judgment of foreclosure of the land contract in question.   In accordance with what has been heretofore said, there was due and unpaid on the 3d day of November, 1920, in addition to the last instalment due upon the first series of notes, the sum of $2,000 of principal.

The plaintiff, therefore, is entitled to the usual and ordinary judgment of foreclosure of land contract for the amount due as indicated herein, which amount became due on November 3, 1920, and such judgment must also provide that unless the defendants, within such time as the trial court shall find reasonable and just under all the facts and circumstances in the case, shall pay to the plaintiff the sum of $2,000 and interest thereon from November 3, 1920, at the rate of six per cent. per annum, together with the costs and disbursements of the action, the defendants and all persons claiming by, through, or under them, or any or either of them, shall be foreclosed of all right, title, and interest in and to the premises and of all right to redeem the same. It follows as a matter of course that if the defendants comply with the provisions of such decree they are entitled to a proper deed of the premises, free and clear of all incumbrances and free and clear of all taxes assessed against and payable on said premises prior to November 3, 1920, and subject only to the mortgage indebtedness of $8,000, with interest thereon from November 3, 1920.

Bahlert v. Chicago, M. & St. P. R. Co. 175 Wis. 481.

*By the Court.*—Judgment reversed, with $25 costs, with directions to enter judgment in the lower court in accordance with this opinion.