SCHUHKNECHT and another, Appellants, vs. ROBERS, Respondent.

*February 8—March 8, 1927.*

*Contracts: To excavate lake and dig channel: Construction: Ambiguities: Practical construction.*

1. The sole duty of the court in construing a contract is to determine what was meant by the language of the instrument. p. 280.
2. Where an excavating contract was superseded by a later one, the two contracts may be compared to ascertain the situation of the parties when the second one was made. p. 281.
3. In the absence of fraud or mistake, the words of a contract must govern and the contract be enforced as written; and the written contract should, in case of doubt, be interpreted against the party by whom drawn. p. 282.
4. A contract to dig a channel and to excavate a natural lake is *held* unambiguous and to allow the excavator twenty-five cents per yard for all dirt excavated from the channel and forty-five cents a yard for such dirt as was moved and spread from the spoil bank, and not seventy cents for all dirt excavated from the channel and spread within 250 feet on either side of the channel. p. 282.

5. The fact that an overpayment occurred does not amount to a practical construction of the contract in the absence of knowledge of the facts and circumstances to which the construction relates; but practical construction has no application to an unambiguous contract. p. 282.

APPEAL from a judgment of the county court of Walworth county: ROSCOE R. LUCE, Judge. *Reversed, with directions.*

This action is based on a contract to dig a channel some 2,200 feet in length from Lake Delavan through a marsh, and at the upper end of the channel to excavate an artificial lake. The defendant *Robers* agreed to dig the channel and spread the dirt taken therefrom. There were two contracts: First, the contract of November 20, 1924, which reads as follows:

"This memorandum of agreement, made and entered into this 20th day of November, A. D. 1924, by and between *Ferd J. Robers,* of Burlington, Wisconsin, party of the first part, and *Schuhknecht* and *Kelley,* of Chicago, Ill., party of the second part, witnesseth:

"The party of the first part hereby agrees to furnish the dredge and the necessary fuel and help and all necessary equipment to dredge a 35-ft. open ditch approximately 2,000 ft. in length for the sum of $1.75 per lineal foot.

"Party of the first part agrees to dig open ditch to a depth of—average depth of 5 ft. and 6 in.

"Party of the second part agrees to have at least the sum of 2,000 lineal feet of open ditch work for the party of the first part.

"It is further understood between the party of the first part and the party of the second part that the party of the first part can dump the dirt taken out of the ditch on both sides of open ditch.

"The party of the first part will render a statement every fifteen days, being on the first and fifteenth of each month, and the party of the second part will pay said first party for the amount of work done and will not hold back more than ten per cent. of the amount due at any time. *Robers* agrees to spread dirt taken out of ditch over a radius of 50 ft. from edge of channel for the sum of $1,250 additional.

"The party of the first part agrees to start work on or about December 20, 1924, and will continue working unless prevented by causes beyond the control of first party, and it is agreed that said first party may work as many hours per day as desired, that is, said first party may work on said job twenty-four hours per day or any other amount.

"In witness whereof the parties have hereunto caused these presents to be signed the day and year above written. *Robers* also agrees to dig a 150 ft. in diameter basin at head of channel for the sum of $785, said basin to have a depth of 6 ft. and to grade all surplus dirt.

"FERD J. ROBERS,

"SCHUHKNECHT & KELLEY,

"By W. Schuhknecht."

The defendant *Robers* proceeded to carry out the foregoing contract, but as the work progressed it was found that the channel was not of sufficient size so that the water from the lake followed the excavation, whereupon the parties entered into a second contract on February 28, 1925, which contract reads as follows:

"This agreement, made this 28th day of February, 1925, between *Ferd J. Robers* of Burlington, Wisconsin, party of the first part, and *Walter Schuhknecht* and *Neil Kelley*, copartners doing business under the firm name and style of Schuhknecht & Kelley, of Chicago, Ill., parties of the second part:

"Witnesseth: That the party of the first part, for and in consideration of the payments to be made to him by the said second parties as hereinafter provided, does hereby covenant, contract, and agree to furnish all the tools, machinery, and labor in and about the digging, constructing, and completing, including spreading of dirt, of a certain channel approximately twenty-two hundred feet in length, thirty-five feet in width in part, and thirty feet in width in part at the bottom, with what is commonly known as a one-to-one slope on both sides, and which channel will average an approximate cut of ten feet, and said first party also agrees to dig and complete an artificial lake at the head end of said channel, said lake to be round in form with a diameter of one hundred feet at the bottom and to be cut to what is commonly known as a one-to-one slope, said lake to be approximately fourteen

feet deep. Said channel and lake to be dug, constructed, and completed on the property of the second parties known as Delavan Highlands on the westerly shore of Delavan Lake, Walworth county, Wisconsin, and along the course laid out by the engineers of the second parties.

"The parties of the second part, for and in consideration of the party of the first part completely and faithfully executing the aforesaid work and furnishing tools and machinery as aforesaid to carry out this contract according to its true meaning and intent, does hereby agree to pay to the party of the first part the sum of twenty-five cents per yard for every yard of material taken out in the construction of said channel, and will pay the additional sum of forty-five cents per yard for every yard of material leveled, it being agreed and understood that the said material will be spread over an area of two hundred fifty feet from the banks of the channel, the dirt or material to be spread on the side of the channel on which it is dumped. Said second parties will pay the further sum of forty-five cents per yard for every yard of dirt or material excavated or moved in the digging and constructing of said lake, said payment to cover the leveling of said dirt or material over an area of two hundred fifty feet from the shore of said lake. The parties further agree that payments for said work shall be made on the following dates and in the following amounts:

$3,000 March 1, 1925,
$4,000 April 1, 1925,
$4,000 May 1, 1925,
$4,000 June 1, 1925,
$4,000 July 1, 1925,

and such further or additional payment on July 1, 1925, as may be found to be due first party. Said payments to be made to said first party at his office in Burlington, Wisconsin, and provided said first party has completed work sufficient in amount or more to make up said amounts, the amount of work done to be estimated either by an engineer employed by the first party or by second parties, and in case the parties hereto cannot agree as to the amount due upon this contract, the parties hereto agree to each employ an engineer to estimate on the work done as to number of yards excavated or leveled, or both, and to abide by the decision of the two engineers, provided said engineers can reach an agreement.

"The parties agree that the contract into which the parties hereto have heretofore entered, dated November 20, 1924, and under which the first party is now working, is hereby canceled and all payments for work done on said channel and lake are to be made pursuant to this contract, including work for which payments may now be due, and first party acknowledges receipt of the sum of thirty-five hundred dollars on the contract hereinbefore referred to.

"Said first party agrees that he will continue with said work (being engaged in the same at the date of this contract) until the same is completed, but shall not be liable for delays caused by weather conditions. or by conditions or causes beyond his control.

"In witness whereof, the parties have hereunto set their hands and seals the day and year first above written.

"In presence of: WALTER SCHUHKNECHT.
    "Wm. J. Flynn. NEIL ·T. KELLEY.
    "W. E. Tully. FERD J. ROBERS."

The defendant *Robers* completed the work under the second contract, and thereafter filed a mechanic's lien against the real estate improved by said channel owned by the plaintiffs, whereupon the plaintiffs brought this action to set aside the lien. The defendant *Ferd J. Robers* answered by way of counterclaim and cross-complaint, praying that his lien be foreclosed and judgment entered accordingly. The owners of certain parcels of land purchased from the plaintiffs were interpleaded.

The case was tried before the court and judgment of foreclosure was entered in favor of the defendant *Robers*. This appeal is taken from that judgment.

For the appellants there was a brief by *E. L. von Suessmilch* and *C. J. Sumner,* both of Delavan, and oral argument by *Mr. Sumner.*

For the respondent there was a brief by *Godfrey & Wilson* of Elkhorn, and oral argument by *Alfred L. Godfrey.*

CROWNHART, J. On the trial of this action it was contended on the part of the appellants that the contract was

plain, unambiguous, and not subject to oral testimony to interpret it. The appellants contended that the contract provided in plain terms that the respondent, *Robers,* was to be paid twenty-five cents a yard for all dirt excavated from the channel, and, further, was to receive forty-five cents a yard for all dirt moved and spread. from the spoil banks.

On the other hand, it was contended by the respondent, *Robers,* that it was the intent of the parties that he should be paid seventy cents a yard for all dirt excavated from the channel and leveled over a space of 250 feet on either side of the channel, and that the contract was ambiguous and subject to explanation by oral testimony.

The difference between the parties as to the interpretation of the contract is apparent. The substance excavated from the channel contained much water and other soft, porous matter subject to shrinkage as it was deposited upon the spoil banks; likewise much of the dirt deposited on the spoil banks would not be required to be moved. The single question to be determined by this court is whether or not the contract is plain and unambiguous and to be interpreted as written, or whether it is ambiguous and subject to oral explanation. The trial court found that the contract was ambiguous and took testimony to determine the intent of the parties. The court thereupon determined from such evidence that the respondent, *Robers,* was entitled to receive seventy cents a yard for all material excavated from the channel and leveled.

The first contract was loosely drawn by the respondent, in typewriting, and parts thereof stricken out by pen and ink, and interlineations added before signing. The second contract was drawn by an attorney then in the employ of the respondent, in typewriting, and was complete in every detail and signed without additions or interlineations.

"It must be borne in mind that it is not the business of construction to look outside of the instrument to get at the intention of the parties, and then carry out that intention

whether the instrument contains language sufficient to express it or not; but the sole duty of construction is, to find out what was meant by the language of the instrument. And this language must be sufficient, when looked at in the light of such facts as the court is entitled to consider, to sustain whatever effect is given to the instrument." *Farmers' Loan & Trust Co. v. Commercial Bank,* 15 Wis. 424, 438.

This rule has been many times repeated by this court.

We may therefore compare the two contracts in order to ascertain the situation of the parties when the second contract was made. It will be noted by the first contract that it was provided that the channel should be excavated for the sum of $1.75 per lineal foot, and that the dirt should be spread over a space of fifty feet from the edge of the channel for the additional sum of $1,250. In other words, the two items were separate; a certain definite sum being appropriated to the excavation, and an additional sum appropriated to the spreading of the spoil banks.

In the second contract the same thought appears. A certain definite sum, that is, twenty-five cents a yard, was to be paid for excavation, and the additional sum of forty-five cents a yard was to be paid for spreading the dirt. If, as respondent contends, the price was to be seventy cents a yard for all dirt excavated and spread, it was easy to say so in plain and simple language. The respondent, in drafting the contract, adopted exactly that method when it came to the excavation of the artificial lake. He then provided that he should receive the sum of forty-five cents per yard for every yard of dirt or material excavated or moved in the digging and constructing of said lake. Note the expression,—"forty-five cents per yard for every yard of dirt or material excavated or moved in the digging and constructing of said lake." But in the digging of the channel the appellants were to pay *Robers* "twenty-five cents per yard for every yard of material taken out in the construction of said channel, and will pay the additional sum

of forty-five cents per yard for every yard of material leveled."

"In the absence of fraud or mistake, the words of the contract must govern, and the contract be enforced as written." *Forest Lawn Co. v. Hanley,* 94 Wis. 23, 26, 68 N. W. 413.

"A written contract should, in case of doubt, be interpreted against the party who has drawn the contract." 6 Ruling Case Law, 854.

We are of the opinion that the contract is plain and unambiguous, and that it is not subject to testimony of witnesses to determine its meaning.. We have no difficulty in determining its plain intent from its terms as written.

The respondent contends that the contract received a practical construction by reason of the fact that the appellants overpaid the respondent for doing the work. The same contention was made in *Burroughs v. Joint School Dist.* 155 Wis. 426, 144 N. W. 977, but the court said:

"No practical construction of the contract binding upon the parties was given it by the fact that defendant overpaid plaintiffs. When such overpayments were discovered further payments were refused. There can be no sound basis for a claim of practical construction in the absence of knowledge of the facts and circumstances to which the construction relates."

Practical construction may be resorted to only when the contract is ambiguous; but where the contract is unambiguous, practical construction has no application. *Fulton v. Stevens,* 99 Wis. 307, 74 N. W. 803.

The contract speaks for itself in plain and unequivocal language. It makes no difference under the law what the parties now think it means. The sole question is the fair and reasonable interpretation of the writing as it stands. No one can read the contract here under consideration without being convinced that the contract was intended to declare the full intention of the parties. See *John O'Brien L.*

*Co. v. Wilkinson,* 117 Wis. 468, 94 N. W. 337; *Hart v. Hart,* 117 Wis. 639, 94 N. W. 890.

The respondent claims that if the contract is interpreted as claimed by appellants there results great difficulty in measuring the material leveled or spread from the spoil banks. Some such difficulty seems to have been contemplated and cared for in the contract. Each party was to employ an engineer, to act together as umpires in case of dispute. However, the testimony does not disclose any insurmountable obstacles in reaching a fair measurement.

The judgment of the county court must be reversed.

*By the Court.*—The judgment of the county court is reversed, with directions to enter judgment in accordance with this opinion.