DEREE, Respondent, vs. RELIABLE TOOL & MACHINE, INC., and another, Appellants.*

*February 26—April 8, 1947.*

* Motion for rehearing denied, with $25 costs, on June 10, 1947.

The cause was submitted for the appellants on the briefs of *Lines, Spooner & Quarles,* attorneys, and *Maxwell H. Herriott* and *Charles S. Quarles* of counsel, all of Milwaukee, and for the respondent on the brief of *Gold & McCann* of Milwaukee, attorneys, and *Joseph Fisher* of Chicago, Illinois, of counsel.

BARLOW, J. William S. Deree, plaintiff and respondent, is the surviving partner of Weber-Deree Engineering & Manufacturing Company of Chicago, Illinois, Henry J. Weber, the other partner, having died on July 24, 1944. J. Robert Baumgartner was engaged in the manufacturing and tool business in Milwaukee, Wisconsin, doing business under the trade name of "Reliable Tool & Machine Works," which was incorporated in October, 1944, as "Reliable Tool & Machine, Inc." Baumgartner and the corporation are defendants and appellants.

Sometime prior to December 13, 1943, Weber and Deree discussed with Baumgartner a possible agreement whereby they were to obtain contracts and business for the defendant

Baumgartner. They had a contract prepared, and there is testimony that a second contract was prepared by them and submitted to the defendant, which he refused to approve, but on December 13, 1943, defendant Baumgartner approved a contract submitted by Weber and Deree as follows:

"To: Reliable Tool & Machine Works
120 North Broadway
Milwaukee, Wisconsin
  *"Attention: Mr. J. R. Baumgartner, Owner*
·"Dear Mr. Baumgartner:
"You desire to increase your business and the capacity of your plant, and to that end you have agreed to employ the undersigned, Weber-Deree Engineering & Mfg. Co., as an independent contractor, to obtain contracts and business for you, upon the following terms and conditions:

"(1) The undersigned agree to use our best efforts to obtain contracts and business for you, consistent with your operations and plant and expansion facilities; and to devote therefor the necessary time, energy and attention of its entire personnel, including William S. Deree and Henry J. Weber. Such services shall include, among other things, planning, contact work, contract and sales promotion and consultation, in the United States, excepting Milwaukee, Wisconsin.

"(2) You agree to pay to the undersigned for their services hereunder as follows:

"On all contracts and business for tools, fixtures and gauges obtained by or through the undersigned and accepted by you, an amount equal to ten per cent of gross moneys received by you.

"On all contracts and business for production parts and assemblies obtained by or through the undersigned and accepted by you, computed separately on each contract or item of business, an amount equal to five per cent of gross moneys received by you up to $150,000, three and one-half per cent of the gross moneys received by you in excess of $150,000 and up to $250,000, and three per cent of gross moneys received by you in excess of the $250,000.

"(3) In the event that there shall be substantial changes in prices and policies, then the undersigned shall reduce their compensation by written agreement with you, consistent with

such changes; provided, however, in no event shall said compensation be reduced to less than three per cent of gross moneys received by you as aforesaid. In the event that contingencies arise where, through no fault of yours, any contract or item of business cannot be completed by you, then you will pay the undersigned only on that portion of the contract or item of business actually completed.

"(4) You and the undersigned shall account between ourselves monthly, and also finally upon the completion of each contract or item of business.

"(5) This agreement shall begin as of October 1, 1943, and shall continue until December 31, 1948; subject, however, to the rights of either yourself or the undersigned to terminate it upon ninety days' notice at any time after October 1, 1944.

"Your acceptance hereof constitutes our agreement."

Pursuant to the terms of this contract Deree, surviving partner, seeks to recover for services rendered in obtaining contracts and business for defendant Baumgartner. The first contract was obtained with the aircraft division of Pullman Standard Car Manufacturing Company, hereinafter referred to as "Pullman," on December 4, 1943, designated as contract 717. There is no dispute about the services rendered on this contract, and the amount earned by plaintiff in the sum of $7,719.84 has been paid. Claim is made that two contracts were obtained from Midwestern Tool Company and contract 1361 was obtained from the war department. Two other contracts with Pullman are in issue, one being contract 988 and the other contract 1077. In each instance defendant Baumgartner was invited by the Pullman Company to bid, and in order to obtain the contract had to be the successful bidder and manufacture the items contained in the contract in accordance with the specifications submitted. Plaintiff also claims compensation for services for business obtained by the defendant in the year 1945.

August 15, 1944, defendant Baumgartner notified plaintiff that he was canceling the contract of December 13, 1943, at

the expiration of ninety days from the date of receipt of the notice of cancellation.

The trial court allowed plaintiff's claim for obtaining contracts with Midwestern Tool Company and the contract with the war department and contract 1077 with Pullman, disallowing the claim for services in obtaining contract 988 with Pullman and disallowing any claim for services for contracts during the year 1945, ordering judgment accordingly. Defendants appeal from the judgment rendered in favor of plaintiff and from the judgment dismissing their counterclaim. Plaintiff seeks a review of paragraphs 12 and 13 of the findings of fact denying compensation to plaintiff for services rendered in obtaining Pullman contract 988 and contracts from Pullman in 1945.

Without going into detail or lengthy discussion of the facts surrounding the contracts with Midwestern Tool Company and the war department, it is sufficient to state the record contains sufficient facts to sustain the trial court in finding for the plaintiff.

This brings us to Pullman contract 1077, where the trial court found the plaintiff was entitled to compensation for services rendered, in the sum of $11,674.66. Defendants claim there is no proof in the record that plaintiff rendered services in obtaining this contract for the defendants, or that it was obtained "by or through" the plaintiff. Plaintiff relies on the rule of law that conclusions of a trial court on questions of fact will not be disturbed on appeal unless there is an overwhelming preponderance of evidence against such finding, citing *Hill v. American Surety Co.* (1902) 112 Wis. 627, 88 N. W. 642; *Northwestern Fuel Co. v. Lee* (1899), 102 Wis. 426, 78 N. W. 584, and other cases. This requires a careful examination of the evidence.

By the terms of the contract Weber and Deree agreed to use their best efforts to obtain contracts and business for the defendant Baumgartner, and if they did obtain contracts they

were to be paid certain compensation for such services on all contracts and business obtained "by or through" them. While it is conceded that plaintiff obtained an earlier contract from Pullman which was fully performed and compensation paid, the record contains no evidence of any services rendered by the plaintiff in obtaining this contract for defendants. The burden of proof was on the plaintiff to establish that this contract was obtained "by or through" him. Following the original contract with Pullman in December, 1943, during the month of May, 1944, Pullman informed defendant they were having difficulty with a contract which had been let to another company, and inquired whether defendant would be in position to take it over and complete it. Defendant agreed to do so, and in July, 1944, contract 988 was entered into with Pullman and the work completed by defendant. This is the contract on which the trial court disallowed claim for compensation, and will be discussed later in this opinion.

In August, 1944, Pullman invited defendant to bid on another contract, which is the one in question. All form bids were prepared by the office force of defendant and submitted to Pullman. August 25, 1944, Pullman issued a letter of intent, and under date of August 28, 1944, defendant wrote Pullman, relative to this order, as follows:

"We wish to acknowledge and thank you for your letter of intent, dated August 25th, covering the subject purchase order for four hundred and twenty plane sets of the parts which we are already in production on."

After the above correspondence had taken place and the contract had been awarded to defendant, plaintiff wrote defendant under date of September 1, 1944, relative to the subject matter, as follows:

"Pullman Company informed me today that a letter of intent was issued for the balance of the work. Please send me a copy of your proposed bid in order to keep my records up to date."

On September 8, 1944, plaintiff wrote defendant, claiming Pullman contract 1077 had been obtained by or through plaintiff, and testified that at a later date Baumgartner, in a conversation with him, admitted that plaintiff was entitled to pay for services on this contract. Defendant specifically denied having made this statement.

As payments were made to the plaintiff during the performance of prior contracts, work sheets were prepared by the office force of the defendant and delivered to the plaintiff with checks being issued to apply on account. In the work sheet prepared by the office force of defendant on October 31, 1944, reference is made to Pullman contract 1077, and service fees were allowed on this work sheet in the sum of $1,078.42, and a check was issued to apply on account. Thereafter a further check in the sum of $1,000 was issued to plaintiff to apply on account. Defendant Baumgartner testified that numerous checks passed over his desk every day and that he was not in position to examine all work sheets and checks carefully before signing them. During all of the time defendant was performing services for Pullman, defendant's representatives were in contact with the purchasing agent of Pullman, and so far as the evidence shows all business after the first contract was carried on directly between Pullman and defendant and his employees. Plaintiff relies upon his own statement that Baumgartner later agreed that he was entitled to compensation on this contract, and, second, that the work sheet of October 31, 1944, makes reference to the contract. These facts alone are not sufficient to carry the burden of proof on the part of plaintiff to prove that this contract was obtained "by or through" the plaintiff. An overpayment under the facts in this case is not sufficient proof to establish that the plaintiff had performed his part of the contract and entitled him to compensation, even though it is supplemented with his testimony that defendant agreed he was entitled to such compensation.

The contract is not ambiguous and practical construction has no application. *Fulton v. Stevens* (1898), 99 Wis. 307,

74 N. W. 803; *Schuhknecht v. Robers* (1927), 192 Wis. 275, 212 N. W. 657. There is nothing in the contract that entitles plaintiff to repeat orders. The contract was prepared by plaintiff, and the law under the circumstances here involved is well established that such contract must be construed most strongly against the party preparing it. *Felton v. Stacey* (1921), 175 Wis. 471, 185 N. W. 536.

To entitle plaintiff to recover on any work obtained it is necessary for him to bring himself within the terms of his contract of employment. We conclude that he has failed to do so with reference to this particular contract. Thus that portion of the judgment allowing plaintiff compensation for services rendered in obtaining Pullman contract 1077 in the sum of $11,674.66 is reversed.

With reference to plaintiff's review of paragraph 12 of the findings of fact, disallowing plaintiff compensation under Pullman contract 988, we have carefully examined the evidence and, without attempting to review it here, agree with the trial court that it is too confusing and unreliable to meet the burden which rests upon the plaintiff to bring him within the terms of the contract upon which he relies.

Another question which plaintiff seeks to review is finding of fact number 13, disallowing plaintiff compensation for contracts obtained by defendant from Pullman in 1945. Plaintiff relies upon *Braun v. Consolidated Electric Lamp Co.* (1944) 245 Wis. 170, 13 N. W. (2d) 549, in making claim for contracts entered into between Pullman and defendant during the year 1945. The case relied upon does not sustain his position. In the *Braun Case* the contracts in question had been entered into by the agent, providing for delivery of merchandise purchased over a period of time. The contracts were accepted by the company, and the agent discharged. Deliveries were then made in accordance with the accepted contracts, and this court held the agent was entitled to compensation for deliveries made under contracts which had been entered into and approved even though the deliveries were made after he was dis-

charged. In the present case, plaintiff is making claim for compensation where new contracts were entered into after the discharge, not in any way related to the original contract for which plaintiff was entitled to compensation. To sustain plaintiff's position it would be necessary to hold he is entitled to compensation for any contracts entered into at any future time between Pullman and the defendant. This is not in accordance with the terms of the contract of employment between plaintiff and these defendants.

A further question is raised as to whether the contract was ever lawfully terminated, and if so on what date. Under paragraph 5 either party had a right to terminate the contract "upon ninety days' notice at any time after October 1, 1944." Defendant elected to terminate the contract ninety days after August 15, 1944, and gave notice accordingly. It is argued that no notice could be given terminating the contract prior to October 1, 1944, and therefore the contract remains in full force and effect. We cannot agree with this contention. Either party had a right to terminate the contract after October 1, 1944. Prior thereto ninety days' notice had to be given, and when the notice was given so terminating it after October 1, 1944, it was sufficient to comply with the terms of the contract. The contract merely fixes the earliest date at which it could be terminated, and there is no denial that the notice of termination was given. It was therefore effective ninety days after it was received. See *Freiburger v. Texas Co.* (1934) 216 Wis. 546, 257 N. W. 592; *Keller v. Baumgartner* (7th Cir.), 153 Fed. (2d) 474; *Lyon v. Pollard,* 87 U. S. (20 Wall.) 403, 22 L. Ed. 361.

*By the Court.*——Judgment reversed, with directions to enter judgment for defendants on their counterclaim in accordance with this opinion.