BRAUN, Respondent, vs. CONSOLIDATED ELECTRIC LAMP COMPANY, Appellant.

*February 18—March 14, 1944.*

The cause was submitted for the appellant on the brief of *James E. Coleman,* attorney, and *Wm. J. McCauley* of counsel, both of Milwaukee, and for the respondent on the brief of *J. A. C. Lightner,* attorney, and *Thomas E. Torphy* of counsel, both of Milwaukee.

MARTIN, J.  Plaintiff is a salesman; defendant is a manufacturer of electric lamp bulbs, a licensee of General Electric Company on both incandescent and fluorescent lamps; Champion Lamp Works is a division of the defendant company.  Plaintiff started to work for defendant in 1927 as a salesman in the same territory he had at the time in question.  In 1936 the first written contract of employment was made and each year thereafter a renewal agreement was signed.  On September 2, 1940, the parties entered into an agreement in writing whereby plaintiff agreed to render services as a salesman for the defendant in the sale of Champion lamps, manufactured by the defendant, in certain authorized territory.  The agreement provided that same might be terminated by either party by notice to the other party in writing mailed or delivered within thirty days in advance of such termination.  It further provided that defendant would reimburse plaintiff for all business expenses incurred in soliciting business for the company, and provided for a weekly advance of $25, plus a commission on the list purchases of each account on types of lamps specified in the agreement.

Prior to 1937 plaintiff's job was merely to get orders.  Sometime during 1937 defendant instituted a written form of contract for purchase by distributors or jobbers of lamps, which form was thereafter used until the termination of plaintiff's employment on February 1, 1941.  The distributor's or jobber's agreement is referred to as the "JB" agreement.  After this form of agreement was adopted defendant did not sell on discount unless a JB agreement was signed.  The agreements were mailed by defendant to the distributors and jobbers in plaintiff's territory.  Plaintiff personally called on the distributors and jobbers and explained the agreement to them.  These agreements extended for a year, at the end of which time a new contract had to be signed.  Plaintiff would again

cover his territory, secure the new contracts if the distributors and jobbers signed, pick them up or have the jobbers mail them to the defendant. All contracts, whether personally obtained by plaintiff from the distributors and jobbers in his territory or mailed direct to defendant company, were acknowledged by postal-card notice mailed to the plaintiff by the defendant. The work which plaintiff had to do in obtaining these JB contracts was completed when he transmitted them to the defendant, or when they were sent direct by the distributor or jobber to the defendant, and defendant acknowledged them. The contracts with the distributors and jobbers were subject to cancellation by either party upon thirty days' notice in writing. Defendant did not cancel any of the agreements with distributors and jobbers but continued to ship lamps to them up to the end of the year or date of expiration of their contracts.

On December 27, 1940, defendant wrote plaintiff in part as follows :

"In accordance with your agreement, we wish to cancel your salesman's agreement with us as of February 1, 1941.

"Commissions made in that territory up until that date will be paid to you in full and your final check will be sent to you sometime after that date and on our receipt here of various sales material and correspondence which you have in your possession pertaining to Champion lamps."

Defendant contends that it is not liable for any commissions on lamps delivered to distributors and jobbers after February 1, 1941, the date of cancellation of the plaintiff's contract. The plaintiff contends that he is entitled to commissions on all sales made by defendant company to the jobbers and distributors in his territory whose contracts had been procured and accepted by defendant prior to February 1, 1941. Plaintiff's claim is based on purchases actually made by distributors and jobbers in his territory under contracts pro-

cured and accepted prior to February 1, 1941. While defendant had the right to terminate its contract with plaintiff on thirty days' notice, it could not thereby deprive him of the commissions on purchases actually made by the distributors and jobbers under the contracts procured by plaintiff and accepted by defendant before the termination of plaintiff's employment, even though actual delivery of the merchandise to said distributors and jobbers was made subsequent to February 1, 1941, under the current-year contracts. The learned trial judge so interpreted plaintiff's contract of employment and the contracts of defendant company with the jobbers and distributors in plaintiff's territory.

No other issues are presented on this appeal. The judgment must be affirmed.

*By the Court.*—Judgment affirmed.