ULLMAN, Plaintiff-Appellee, v. MAY, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County

No. 20291. Decided May 20, 1946

S. H. Moss, Cleveland, for plaintiff appellee.
E. A. Plazer, Cleveland, for defendant appellant.

## OPINION

By SKEEL, P. J.

The plaintiff appellee was employed by the defendant appellant as salesman. The contract was in writing. By para-

graph C of Provision II of the contract it is provided in part:

"C. In addition to payment due under provisions above, commissions will be paid employee as shown below on all sums of money billed to and collected from each individual client personally procured by the employee; said commission to be paid only during the time this agreement remains in full force and effect."

(then follows the schedule of commissions)
Paragraph (a) of Provision I of the contract provides:

"A. This contract of employment may be terminated by either of the parties hereto upon giving to the other party not less than seven days written notice of the intention to cancel this agreement; provided however, that the restrictive covenants herein contained which are binding upon employees shall be effective for the period of time and in the territory hereafter set forth."

The plaintiff received notice from the defendant which was in the form of a letter cancelling the contract on December 23, 1944. Prior to that time the plaintiff had personally solicited and procured sufficient business so that after the date of plaintiff's discharge and up and until the date of filing the third amended petition herein, the defendant had collected $79,000.00 upon which the plaintiff was not paid commissions.

The plaintiff's third amended petition alleges in the second cause of action that "defendant * * * * without grounds therefor but in bad faith and with intent to defraud plaintiff of his commissions * * * * *" caused his discharge by giving the written notice as hereinbefore referred to. The first cause of action claims said commissions under the terms of the contract above referred to and the third cause of action is based on quantum meruit for services rendered. Upon trial the court found for the plaintiff in the full amount prayed for.

There are two items about which there is no dispute, one for $22.50 and the other for $167.00 which amounts the defendant tendered the plaintiff before trial.

This appeal on questions of law is presented to this court upon the defendant's claims that the judgment is contrary to law. The trial below was had upon a stipulation as to the facts agreed to by the parties, which were as follows:

"The parties to the above captioned action appear by their respective counsel and stipulate and agree that the following are the facts, together with the exhibits thereto attached upon which this case may be adjudged and determined:

(1) The proper parties are before this court. The plaintiff was the employee of the defendant, George D. May a nonresident of the State of Ohio, but who is properly before this court by virtue of attachment proceedings in which proceedings the defendant has posted a proper and sufficient undertaking according to law:

(2) The parties to this action, on or about January 31, 1944, entered into a written agreement, drawn by the defendant, the original or a true copy whereof is hereto attached.

(3) That pursuant to said agreement, the plaintiff entered into the employ of the defendant, and complied with all provisions of the agreement incumbent upon him to perform.

(4) That the plaintiff remained active in the employ of the defendant until Dec. 23, 1944, when plaintiff received a letter mailed to plaintiff by defendant dated December 19, 1944, a true copy of which letter is hereto attached.

(5) That on December 23, 1944, and thereafter, the defendant was servicing certain clients procured for the defendant by the plaintiff, to-wit: Cleveland Trencher Co. and Buckeye Brass Company, both procured by plaintiff many weeks prior to December 23, 1944 and upon whose payments plaintiff received commissions prior to December 15, 1944;

(6) That subsequent to December 15, 1944, and up to and including the period of time covered by the third amended petition, the defendant made additional collections from said clients in the sum of Seventy-Nine Thousand Dollars ($79,000.-00) no part of which was ever paid to plaintiff;

(7) That the commissions on said collections are to be computed at 5% in the event plaintiff prevails in this action;

(8) That in addition to the foregoing clients serviced, the plaintiff had obtained a survey for the defendant in the Continental Lithograph Company for which plaintiff is entitled to receive the sum of Fifty Dollars ($50.00) for his commission;

(9) That the defendant tendered to the plaintiff on January 10, 1945, and on January 27, 1945, respectively, the sums of Twenty Two and 50/100 Dollars ($22.50) and One Hundred Sixty Seven Dollars ($167.00) respectively; that the checks with vouchers attached, representing said tenders, are hereto attached and that the plaintiff refused to accept said sums;

(10)   That plaintiff has not been informed by the defendant of minimum or "must" standards of employment of production;

(11)   That all documents hereto attached to which reference is'herein made, together with letters from defendant to.plaintiff, dated December 19, 1944, January 10, 1945 and January 11, 1945 and copy of letter from plaintiff to defendant dated December 23, 1944 and statement prepared by defendant relating to receipts from clients are offered and may be received in evidence."

The defendant's letter of December 18, 1944, advised the plaintiff of the cancelling of his contract of employment. It stated that the company regretted that the plaintiff's association with the company had not been mutually profitable; that the plaintiff's attitude toward his work had been excellent but that the company had "must" performance standards which under the circumstances left them no other alternative.

The plaintiff's letter acknowledged receipt of defendant's letter cancelling the contract. The plaintiff claimed the contract could not be terminated until the 26 of December and submitted his expense account to that date. He next inquired as to whether provision was being made for commissions due him for the "Continental Lithograph Company, Carey Machine, and current billing on Cleveland Trencher" and then added, "the least that you can do for a man when you let him go is to let him know how he stands financially". He stated that he "talked with the regional manager ten days ago and was assured that if he came through with some business everything would be all right." That he secured two new deals but because he had been discharged he had protected himself regarding these deals. He further states that he considered that all the trouble causing unrest in the May Company should be put on Mr. Noonan, the regional manager; that his unseemly conduct in conferences with prospects absolutely destroyed every chance of getting a contract and that because of his conduct the plaintiff was afraid to take him any place where a deal was in prospect."

The plaintiff then referred to the paragraph of the defendant's letter of December 19, which directed plaintiff's attention to the "must" standards of producing business, and then comments on the inability of the defendant's top officials to secure contracts in his district. He then states that high pressure methods cannot be used where business is managed by conservative men and concludes by saying that he does

not want his job back but insists upon an immediate reply to his request about his financial standing.

The defendant's letter of January 11, states that the plaintiff will be credited with all accruals up to and including one week after December 19th and states that the answer as to the credits to become due him on the several jobs to which the plaintiff referred in his letter, is to be found in the working agreement. They expressed regret because of the plaintiff's attitude as expressed in his letter of December 23rd and states that the New York representative had inquired about him and that they had heartily recommended him for employment by the New York office as they had heard that there had been some negotiations along that line.

The foregoing is all the evidence submitted to the court.

The provisions of the contract by which the plaintiff is not to receive commissions after the contract is cancelled, completely refutes the plaintiff's claim of the right to recover under his first and third causes of action. This leaves only the question as to whether or not there is any evidence to support plaintiff's contention under his second cause of action that the cancellation of this contract was * * * *" without grounds therefor but in bad faith and with intent to defraud plaintiff of his commissions * * *." Such an allegation must be supported by clear and convincing proof. An examination of the record fails to disclose any proof that even remotely could be said to support such claim of fraud or bad faith.

The most that can be said for the evidence upon which the plaintiff relies is that the plaintiff was not informed of any "must" standard of producing business and that the use of such a reason points to his discharge without any actual grounds. But the contract did not provide that he was to be employed as long as he was giving satisfactory service or like circumstances. It simply provided that either party could terminate the relationship upon seven days written notice. The plaintiff could quit without giving a reason for so doing and the defendant could likewise end the contract of employment without stating its reason. Therefore the cases relied upon by plaintiff wherein it is held that when employees are hired as long as they give satisfaction, that the employer's dissatisfaction must be based on reasonable grounds, are not in point.

In **O, Jur., Vol. 26, page 222, §91,** the rule is stated as follows:

"If an employment is at will, the employer may discharge

the employee at any time without incurring any liability as for breach of contract."

The contract under consideration is equally explicit, on the subject of compensation in the event of its termination. We again quote from the contract:

"* * * ; said commissions to be paid only during the time this agreement remains in full force and effect * * *."

The plaintiff in support of his contention that the contract between the parties should be interpreted in such a way that would entitle him to receive the benefit of the commissions coming on business secured by him after the date of his discharge, even though it is not established that he was discharged "without grounds but in bad faith and with intent to defraud" relied strongly on the case of Braun v Consolidated Electric Lamp Co. 245 Wis. 170; 13°N. W. 2nd 549 (Supreme Court of Wisconsin decided 3/11/44).

In this case there was a contract of employment between plaintiff and defendant by which plaintiff was to receive expenses, a drawing account of $25.00 per week and a commission on all lamps sold. The contract provided for the right to terminate it by either party upon 30 days notice in writing. The defendant changed the manner of selling its lamps by requiring the purchaser to sign a contract for a yearly supply and the plaintiff, prior to his discharge, secured a great number of these yearly contracts. Upon notice of his discharge the defendant claimed that he was entitled only to such commissions as were due for lamps actually delivered to the purchaser on the date of plaintiff's discharge. The plaintiff, however, contended that he would be entitled to the commissions that would become due under all of the contracts which he had made for the purchase of lamps, including those that would be ordered delivered after the date of his discharge. The court in sustaining the plaintiff's contention said: (Syllabus)

"Under contracts involved, a manufacturer of electric bulbs had the right to terminate its commission contract with a salesman, but it could not thereby deprive him of the commissions on purchases actually made by distributors and jobbers under the contracts procured by him and accepted by the

manfucturer before the termination of his employment, even though actual delivery of the merchandise to such distributors and jobbers was made subsequent thereto."

The facts and holding in the case of Ohio Marble Co., v Byrd, 65 Fed. 2nd, 98, also relied on by appellee, are almost identical with those in the Lamp Company case just quoted. Unquestionably these cases are supported by the great weight of authority but they are to be distinguished from the case now before us in that here the contract clearly provides that plaintiff's compensation by way of commissions shall stop when the contract is terminated as provided therein.

It is equally true that where an employer or principal who has employed an agent to accomplish a particular result, and then discharges the agent wrongfully in order to avoid payment of the commission, and the result is thereafter accomplished because of the prior efforts of the agent, such agent is entitled to the agreed compensation.

Erk v Glenn L. Martin Co. 32 Ill. Supp. 722.

But as indicated above, the facts of the case now before us are wholly different. Here the contract does provide as to the rights of the parties on the subject of commissions that would have become due on business secured by the appellee, after he had been dismissed from the appellant's service, in the manner provided by the contract of employment, and further there is no evidence in the record which would justify a conclusion that the appellee was discharged for the purpose of avoiding the payment of further commissions on the contracts he had already secured.

In the case of Burton v Farm & Home Savings & Loan Assoc. of Missouri, 109 S. W. 2nd, 233 (Court of Civil Appeals of Texas, Sept. 10, 1937) the plaintiff who had been appointed the agent of defendant to represent it in the City of Denton, Texas, upon an agreement to be paid 1-1/2% on loans procured by such agent and approved by the company and 1-1/2% on the monthly payments collected on the defendant's loans in Denton. The agent was dismissed from the company's service and this action was brought seeking to recover 1-1/2% on the balance of all loans due the defendant at the time of plaintiff's dismissal, on the theory that he had a vested interest in the outstanding loans which he had procured, to the extent of the 1-1/2% collection fee. The court, holding for the defendant, said:

(Syllabus) "Where loan agency agreement entitled agent to a commission on monthly payments made to him by borrow-

ers but entitled loan association to terminate agency at any time, agent did not have vested interest in loans outstanding at the time of termination of his agency and for the procurement of which he had already been paid commissions, so as to entitle him to commissions which he would have received had loans been paid to him in monthly payments."

See also Addressograph Co. v Office Appliance Company, 153 S. W. 804 (Sup. Ct. of Arkansas, Feb. 10, 1913).

We conclude therefore that by the plain provisions of the contract the right to receive commissions for contracts secured by the appellee was to terminate on the day of his dismissal from the appellant's service. The judgment is therefore modified and as modified is affirmed.

MORGAN, J., dissents and LIEGHLEY J., concurs.

## DISSENTING OPINION

By MORGAN, J. (Dissenting)

In this case the Municipal Court of Cleveland rendered judgment for the plaintiff in the sum of $4,000.00 from which judgment the defendant appeals. All of the facts in the case were stipulated by the parties.

On January 31, 1944, the plaintiff appellee entered into a contract of employment with the defendant doing business as George S. May Company, by which the plaintiff agreed to enter into the service of the defendant in securing clients for him in his business of management and industrial engineering.

The contract between the parties provided:

"* * * * *

1. (a) This contract of employment may be terminated by either of the parties hereto upon giving to the other party not less than seven days of written notice of the intention to cancel this agreement, provided, however, that the restrictive covenants herein contained which are binding upon Employee, shall be effective for the period of time and in the territory hereinafter set forth.

a. The Employer agrees to pay the Employee commissions and bonuses as follows:

(a) a drawing account, applicable against commissions earned of $30.00 per week.

(b) $25.00 where the Client sold has less than fifty (50) factory employees or does less than $250,000 in annual wholesale or retail sales volume.

$50.00 where the Client sold has more than fifty (50) factory employees or does more than $250,000 in annual wholesale or retail sales volume.

(c) In addition to payment due under provisions above, commissions will be paid Employee as shown below on all sums of money billed to and collected from each individual client personally procured by the Employee; said commissions to be paid only during the time this agreement remains in full force and effect;

Two percent (2%) on the first $3000.00,
Three percent (3%) from $3000. to $10,000.
Four percent (4%) from $10,000. to $15,000.
Five percent (5%) from $15,000 up . . . . . .
* * * * *"

The contract contained further restrictive provisions by which the plaintiff, as Employee, agreed during the life of the contract or at any time within a period of two years from the date of cancellation or termination of the agreement, not to enter into the employ of another engaged in the same business or to become interested on his own account in such a business.

The plaintiff continued active in the said employment until December 23, 1944, when he received a letter mailed by the defendant to him, dated December 19, 1944, a copy of which is as follows:

"This it to advise you that we are cancelling your Special Representative Working Agreement dated January 31, 1944, effective date December 16, 1944. This notice is being sent to you after a thorough discussion with your Regional Manager, Mr. G. M. Noonan and your District Manager, Mr. George Matthews, as well as Mr. Moss, the Executive Supervisor.

We regret that our association did not prove to be mutually profitable, and in your particular instance your attitude has been execellent; however, we do have **must** performance standards, and under the circumstances have no other alternative.

We take this opportunity to wish you the very best of luck for the future and if we are able in any way to assist you in making a new connection do not hesitate to call on us.

If you happen to be in Chicago, we will be happy to see you if you care to drop in.

Very truly yours

GEORGE S. MAY COMPANY

(signed) E. B. Mulich

Director of Field Service."

The defendant by the above letter of December 19, 1944, attempted to cancel plaintiff's contract of employment "effective date December 16, 1944." It is obvious that the attempt to cancel the contract as of December 16, 1944, three days before the date of the letter of the cancellation, was not effective as the contract required that seven days written notice of the intention to cancel be given to the other party.

It was stipulated by the parties that prior to December 23, 1944, the plaintiff had procured for defendant certain clients and among them were the Cleveland Trencher Company and the Buckeye Brass Company. These clients were procured by plaintiff for the defendant "many weeks prior to December 23, 1944, and upon whose payments plaintiff received commissions prior to Dec. 15, 1944." As to what commission plaintiff had received on these accounts prior to December 15, 1944, was not stipulated.

It was stipulated by the parties, paragraph 6:

"That subsequent to December 15, 1944, and up to and including the period of time covered by the third amended petition the defendant made additional collections from said clients in the sum of $79,000.00 no part of which was ever paid to the plaintiff." The third amended petition was filed on October 5, 1945. It is fair to assume that in fixing his price for his services to clients the defendant would include a 5% commission as a cost item. The effect of the reversal of this case is to enable the defendant to escape the payment of commissions to anyone on said $79,000.00 of business received from clients produced by plaintiff, and to give the defendant the amount of such commissions as an additional profit.

If there had been no cancellation of this contract by the defendant, the plaintiff would have been clearly entitled to this commission without any further effort on his part. Under the contract he had earned his 5% commission when he procured the clients for the defendant.

The majority of this court consider themselves bound by the express terms of the contract that the commissions were "to be paid only during the time this agreement remains in

full force and effect." Inasmuch as the $79,000.00 from clients produced by plaintiff was collected after the defendant had cancelled the contract, the majority of the court have concluded that no commissions are payable and that plaintiff's claim is otherwise without merit. With this conclusion I do not agree for the following reasons:

The petition in this case contains three causes of action. The first seeks damages for a breach of contract; the second sounds in tort; and the third is based on quantum meruit. We shall consider them in order.

The contract between the parties clearly and explicitly states that "commissions will be paid employees * * * on all sums of money billed to and collected from each individual client personally procured by the employee." It is stipulated that $79,000 was billed to and collected from clients personally procured by plaintiff when an employee and that the plaintiff has received no commissions thereon. The plaintiff maintains that the intent of the clause immediately following, "said commissions to be paid only during the time this agreement remains in full force and effect" is not to deprive the employee of the commissions given him in the preceding sentence but to make certain that the employee would have no claim based on collections from clients with whom employee might have negotiated but who were not actually signed up and "procured" until after the agreement ceased to be in full force and effect.

Although this may seem to be a forced construction, reputable courts have sustained such a construction in similar cases.

In Brewer v Singer Sewing Machine Co. 93 S. W. 755, the supreme court of Arkansas permitted the recovery by the agent of commissions on collections made after his principal had terminated the employment although the contract contained provisions that the agreement could be terminated at the pleasure of either party and that all claims for commissions should "cease immediately upon the termination of this agreement." The court said:

"It is the duty of courts when the contracts are fairly susceptible of more than one construction, to adopt such as will not work a forfeiture of the acquired rights of either party * * * * *.

While the cardinal rule for construction of contracts is to arrive at the real intention of the parties, if possible, yet where that intention is doubtful, or obscure, a construction

should be adopted by the courts which is most fair and reasonable and which will impose the least hardship upon either of the contracting parties. Applying this solitary rule of construction, we think the trial court properly interpreted the contract and allowed a recovery for commissions."

See also: Braun v Consolidated Electric Lamp Co. 245 Wis.'170.

There is a second ground on which the judgment in this case should be affirmed. It is based on the second cause of action. The applicable principles of law are well stated in Restatement of the Law of Agency, Vol. 2, Sec. 454 as follows:

"An agent to whom the principal has made a revocable offer of compensation if he accomplishes a specified result is entitled to the promised amount if the principal in order to avoid payment of it, revokes the offer and thereafter the result is accomplished, the agent's prior efforts being the effective cause thereof."

In the comment following the above section 454, it is said in the Restatement of the Law of Agency:

"If, however, the agent would lose all compensation, if the principal were to terminate the employment, and if the agent is on the verge of success and, but for the aleatory element in the transaction, he would be entitled to practically full compensation for his services, the rule stated in this section is necessary in order to prevent sharp dealing. Under such conditions, if the principal attempts to revoke his offer to the agent, intending thereby to take the benefits of the agent's services without paying for them, he acts in bad faith and if he thus acts, specific reparation is afforded the agent by disregarding the revocation and determining his right to the promised compensation as though no revocation had been made."

In defendant's letter of Dec. 19, 1944, when the defendant first informed plaintiff of its intention to terminate the latter's contract of employment, the only reason given for the termination of the contract is as follows:

"We regret that our association did not prove to be mutually profitable and in your particular instance your attitude has been excellent. However we do have **must** performance

standards and under the circumstances have no other alternative."

As to what defendant's "must performance standards" are the record is wholly silent. There is no reference to such standards in the contract and it is admitted in the stipulation of facts in this case, paragraph 10 "that plaintiff has not been informed by the defendant of minimum or 'must' standards of employment or production." On the contrary the stipulation of facts provides (paragraph 3):

"That pursuant to said agreement, the plaintiff entered into the employ of defendant and complied with all provisions of the agreement incumbent upon him to perform."

The provisions of the agreement incumbent upon plaintiff to perform and which the stipulation of facts in this case shows that plaintiff complied with all of them, are as follows:

"Employee agrees that during the term of his employment he will devote his entire time and attention and give his best efforts and skill as a salesman exclusively to the business and in and about the interests of employer, and will perform such services in and about the business of employer as may from time to time be assigned to him and will in all respects do his utmost to enhance and develop the best interests and welfare of employer and its business."

According to the stipulation of facts in this case plaintiff performed all of the said provisions.

That the reason for terminating the contract was not dissatisfaction with plaintiff's services is shown by a paragraph in defendant's letter dated January 11, 1945, to plaintiff as follows:

"I might add further, that Lloyd Smith was asking about you when in the Chicago office last week and I took the opportunity to heartily recommend your services to the New York office and I understand you have done some negotiating in this respect."

If the defendant had some good reason for terminating its contract with plaintiff for Cleveland, defendant would not so soon have "heartily recommended" plaintiff for employment in the New York office.

The conclusion is irresistible that the termination of the contract by defendant was in bad faith and therefore should not deprive plaintiff of his claim for commission, under the principles set forth in the above Section 454 of the Restatement of the Law of Agency and in the following cases:

Watkins Co. v Rich, 254 Mich. 82

Studner v Carburetor Co. Inc. 172 N. Y. Supp. 836

Coleman v Michigan Mutual Life Ins Co. 100 S. W. 122

There is still a third ground for the affirmance of the judgment in this case. The third cause of action sought a recovery on the basis of quantum meruit. As already stated the result of the reversal of the judgment in this case is to save the defendant the 5% commission which under the contract it was to pay plaintiff for clients procured by him and which amount undoubtedly had entered into defendant's costs and had been covered in the amount to be paid by clients for defendant's services. The defendant would be unjustly enriched by the amount of this additional profit secured from clients produced by plaintiff and on this ground alone plaintiff should be permitted to recover the reasonable value of his services even if he is not permitted to recover on the contract.

Section 457 of the Restatement of the Law of Agency states:

"A principal for whom an agent has performed services in accordance with a voidable contract which is avoided by one of the parties or for whom an agent or purported agent has performed services without a promise by the principal to pay, is subject to liability to the agent to the extent that he has been unjustly enriched by such services."

In 3 Corpus Juris Secundum, 88, it is stated:

"On the other hand, in the absence of an agreement to the contrary in the agency contract, a revocation of authority will not be allowed to work injury to the agent with reference to what he has already done under the appointment and where an agency, terminable at the will of the principal, is revoked by him without any fault on the part of the agent, the agent is ordinarily entitled to commissions or salary already earned at the time of his discharge, or to a reasonable compensation for his services rendered before that time."

In the case of Aetna Ins. Co. v. Nexsen, 84 Ind. 347 in an action by an agent for the amount agreed to be paid to

him on renewal premium, which, however, were collected after his employment had been terminated, the court said at page 349:

"It may be true, as appellant asserts, that it had a right to dismiss the appellee at any time, and yet a right of action still exists. It would exist, beyond all question, for the commission upon the premiums collected prior to the dismissal, and, in our opinion, is not restricted to such commissions. The services of the agent in securing policies, upon which future premiums would in the ordinary course of business be received by the appellant, were of value and that value should be paid to the agent. The service rendered by the agent gave him some claim for compensation, although the payment of the premium would not be paid until some time in the future."

The commission agreed to be paid the plaintiff in the absence of other evidence to the contrary, would also represent the reasonable compensation for his services so that as bearing on the amount of plaintiff's recovery it is immaterial whether this amount is based on a breach of contract or on quantum meruit.

I conclude that even if the view of the majority of this court as to the proper construction of the contract is accepted the plaintiff is still entitled to the judgment. This record presents a case of the unjust enrichment of the defendant. The defendant has been enriched to the extent of the 5% commission, which unless the plaintiff is permitted to recover in this action, the defendant has saved for himself by terminating plaintiff's employment. That this enrichment is unjust is shown by the statements and admissions stipulated in the record hereinabove set forth showing that the termination of plaintiff's employment was for no good reason and in bad faith.

For the above reasons I dissent from the judgment of reversal in this case.